**UNITED STATES of America, Appellee,**

v.

**Jose Leon BARAHONA, Appellant.**

**No. 92–2576.**

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 18, 1992.

Decided April 5, 1993.

No counsel present for oral argument on behalf of the appellant (Anthony P. Brooklier, Beverly Hills, CA, on brief).

Mark A. Miller, Kansas City, MO, argued, for appellee.

Before JOHN R. GIBSON, WOLLMAN, Circuit Judges, and STROM,* District Judge.

STROM, District Judge (sitting by designation).

On October 7, 1991, Jose Leon Barahona was indicted by a grand jury on one count of possession with intent to distribute five (5) kilograms or more of cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). On January 29, 1992, the district court,[1] adopting the report and recommendation of the magistrate judge,[2] denied Barahona's motion to suppress. On February 10, 1992,

Barahona entered a conditional plea of guilty, subject to his appeal of the suppression ruling. On June 5, 1992, a sentence of one hundred twenty-one (121) months was imposed. Barahona appeals the order denying the motion to suppress and his sentence. We affirm.

I.

On September 27, 1991, Missouri State Highway Patrol Trooper Martin Chitwood observed Barahona's 1991 maroon Cadillac driving erratically on I–70. Chitwood saw the vehicle change lanes without using a turn signal, then go partially onto the shoulder of the road and come back onto the roadway. There was no traffic in the vicinity of the vehicle. Chitwood stopped Barahona and asked, in English, to see his driver's license. When Barahona appeared to have difficulty understanding, Chitwood used hand motions to communicate his request. Barahona handed Chitwood a paper driver's license from the state of California and the rental contract for the car. Using hand motions, Chitwood asked Barahona to exit the car and accompany him to the patrol car. In the front seat of the patrol car, Chitwood tried to explain that he was stopped because he appeared to be weaving. Barahona said, "Tired." Chitwood asked Barahona where he was going and Barahona said, "St. Louis." Chitwood asked Barahona if he was on vacation, and Barahona replied: "Yes, vacation."

The results of a check of Barahona's name through a criminal intelligence information network encompassing approximately twenty-five or thirty states were negative. A computer check of Barahona's California driver's license failed to indicate whether the license was valid. Noticing the car rental agreement listed a "Ferdinand Aguinaldo" as the renter, Chitwood pointed to the name, and Barahona responded, "Amigo," or friend. Chitwood also noticed that the rental contract indicat-

---

* The Honorable Lyle E. Strom, Chief Judge, District of Nebraska, sitting by designation.

1. The Honorable Dean Whipple, United States District Judge for the Western District of Missouri, presiding.

2. The Honorable Robert E. Larsen, United States Magistrate Judge for the Western District of Missouri.

ed that the car was due to be returned to Los Angeles on October 4, 1991, which, according to Chitwood's calculations, would leave Barahona with only one or two days in St. Louis. Chitwood became suspicious and concluded that Barahona probably was not on vacation.

Chitwood handed Barahona a consent to search form printed in Spanish. At this time, another highway patrolman, Trooper Harris, arrived at the scene, but remained in his patrol car. Chitwood underlined the words with his finger, one line at a time, as Barahona read. It took Barahona approximately two minutes to read the form, which he appeared to have no trouble understanding. Barahona then pointed to his car and stated, "You can look, sir," and immediately thereafter voluntarily exited the patrol car. Because of his apparent willingness to submit to a search, Barahona was not asked to sign the form. Trooper Chitwood followed Barahona to his vehicle, where Trooper Harris joined them. Without being asked, Barahona reached into the Cadillac, retrieved the keys, and unlocked the electric door locks. Barahona raised his arms and pointed to the interior of the car in a way that the troopers interpreted to mean "Look." Barahona then went to the rear of the car, unlocked the trunk, and made a similar motion with his arms inviting the troopers to examine it. Chitwood told Barahona to move over by Trooper Harris, and Barahona immediately complied. Chitwood opened the trunk, which revealed a duffle bag. Chitwood opened the duffle bag and pulled out a brick of cocaine. The total span of time from the initial arrest to the discovery of the cocaine was ten minutes.

Trooper Harris informed Barahona he was under arrest for possession of illegal drugs. Harris showed Barahona a card with the *Miranda* warnings printed in English and Spanish. Barahona read it aloud and indicated after each section that he understood its contents. Thereafter, Barahona was transported to the Booneville, Missouri, Police Station. A retired high school Spanish teacher, Mrs. Margaret Jackson, was contacted to act as a translator. Upon arriving at the station, at approximately 6:30 p.m., Mrs. Jackson was given a card with *Miranda* warnings printed in both English and Spanish to read to Barahona. She read one section at a time, and after each section, asked Barahona if he understood. Barahona replied that he did. While at the station, Barahona was not asked to waive his rights, nor was he questioned.

Barahona was then transported to the Columbia, Missouri, police station. Officer Julie De Mello, who is fluent in Spanish, met the troopers at the station to act as an interpreter. Officer De Mello translated questions to Barahona asked by another officer, Trooper Gene Mills. In response to the questions, Barahona explained how he was hired to transport the cocaine from Los Angeles to Troy, Illinois, and what his instructions were for delivering it. Officer De Mello asked Barahona to participate in a controlled delivery of the cocaine. Barahona expressed concern for his safety and that of his family if he did so. He was told that he or his family may be harmed by those people even if he did not cooperate, and that it would not hurt his case if he did cooperate. In addition, he was told that if he did not cooperate, then an officer would pose as him and attempt the delivery. Barahona subsequently agreed to cooperate. He attempted a controlled delivery of the cocaine, but was unsuccessful.

On Monday, September 30, 1991, Barahona met with Special Agent David Hamilton of the Immigration Service, who speaks Spanish. Hamilton read Barahona his *Miranda* rights in Spanish and asked him if he understood. Barahona stated that he did. Regarding the events occurring subsequently, the magistrate judge found as follows (Report and Recommendation ¶ 23): Hamilton asked Barahona if he wished to waive his rights. Barahona refused to sign the waiver form and stated that he would like an attorney. (Tr. of Suppression Hr'g, Dec. 10, 1991, at 19, 31.) Hamilton asked Barahona if he had ever previously requested an attorney. Barahona said "yes," and then said, "Oh, no, no." Hamilton again asked Barahona if he had ever requested an attorney. Barahona said, "Oh,

no, no" again and waved his hands. (Tr. of Suppression Hr'g, Dec. 10, 1991, at 31–32.) Barahona then told Hamilton to ask him any questions. Hamilton asked Barahona if the officer on the highway had asked permission to search his car. Barahona stated that he had. After a few more immigration-related questions by Hamilton, the interview was concluded and Barahona was transported to the courthouse for arraignment. (Tr. of Suppression Hr'g, Dec. 10, 1991, at 32–33.)

## II.

Barahona argues that the district court erred in denying his motion to suppress physical evidence and statements. He claims the search of his car was an unreasonable search in violation of the Fourth Amendment because 1) it was the result of an unreasonable detention; and 2) he did not consent to it. He also claims that statements were obtained from him in violation of his *Miranda* right to have counsel present during custodial interrogation. The Court will discuss these claims in order.

## A.

It is clear that the initial stop of Barahona's car was valid. Trooper Chitwood observed Barahona's vehicle change lanes without using a turn signal, and then drive partially onto the shoulder of the road and back onto the highway. Barahona concedes that Trooper Chitwood had "the legal power" to charge him with a traffic violation. It is well established that a traffic violation—however minor—creates probable cause to stop the driver of a vehicle. *United States v. Cummins*, 920 F.2d 498, 500 (8th Cir.1990), *reh'g denied* (January 17, 1991) (en banc), *cert. denied*, —— U.S. ——, 112 S.Ct. 428, 116 L.Ed.2d 448–449 (1991); *see Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977); *United States v. Pillow*, 842 F.2d 1001 (8th Cir.1988). Moreover, the threat to highway safety posed by the erratic movements of Barahona's vehicle clearly constituted a legitimate reason for the stop. *See Cummins*, 920 F.2d at 501.

The real issue is whether, given the lawfulness of the initial stop, "the resulting detention was 'reasonably related in scope to the circumstances which justified the interference in the first place.'" *Id.* at 502 (quoting *Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968)). For a detention to be reasonable, an officer's questions must relate to the purpose of the stop. *See id.* However, if the responses of the detainee and the circumstances give rise to suspicions unrelated to the traffic offense, an officer may broaden his inquiry and satisfy those suspicions. *See id.*

In this case, after stopping Barahona's car, Chitwood asked Barahona for his driver's license. Barahona gave him a paper California driver's license and the rental contract for the car. After Chitwood explained he was stopped because he was weaving, Barahona responded he was "tired." Chitwood then asked Barahona for his destination and whether he was on vacation. Barahona responded that he was going to St. Louis and was on vacation. All of Chitwood's questions were reasonably related to ascertaining the reasons for Barahona's erratic driving and whether he posed a danger to others on the road. As such, Trooper Chitwood's initial investigation was reasonably related to the purpose of the stop. Subsequently, a customary computer check of Barahona's license failed to verify its validity. Moreover, from reading the car rental contract, Chitwood discovered that the car was rented under another name and was to be returned to Los Angeles in a few days, leaving Barahona only one or two days in St. Louis—an unusually short time for a long-distance vacation by car. At this point, Chitwood had justification for a greater intrusion unrelated to the traffic stop. The totality of circumstances known to the trooper met the requisite level of reasonable suspicion under *Terry* and entitled him to detain Barahona until he had satisfied his suspicions. *See id.* Therefore, the

search of Barahona's vehicle did not arise from an unreasonable detention.

### B.

Barahona next argues that the cocaine found in the trunk of his car should be suppressed because he did not consent to the search of the vehicle. Barahona alleges that he expressed his opposition to the search in Spanish, but his phrases and gestures were misunderstood by the trooper; and that he refused to sign the consent to search form presented by the trooper. He also alleges that the situation in which the consent was requested was unduly coercive.

 Even in the absence of probable cause or a warrant, police officers may search an area if they obtain a voluntary consent from someone possessing adequate authority over the area. *United States v. Chaidez*, 906 F.2d 377, 380 (8th Cir.1990); *see United States v. Matlock*, 415 U.S. 164, 171 and n. 7, 94 S.Ct. 988, 993 and n. 7, 39 L.Ed.2d 242 (1974); *Schneckloth v. Bustamonte*, 412 U.S. 218, 227–28, 93 S.Ct. 2041, 2047–48, 36 L.Ed.2d 854 (1973). The government bears the burden of proving a voluntary consent to search by a preponderance of the evidence. *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 1791–92, 20 L.Ed.2d 797 (1968); *United States v. Ramey*, 711 F.2d 104, 107 (8th Cir.1983).

██ A consent is voluntary if it is "the product of an essentially free and unconstrained choice by its maker," *Bustamonte*, 412 U.S. at 225, 93 S.Ct. at 2047, rather than "the product of duress or coercion, express or implied." *Id.* at 227, 93 S.Ct. at 2048. Awareness of the right to refuse is not necessary for a consent to be voluntary. *Id.* at 234–35, 93 S.Ct. at 2051; *see Chaidez*, 906 F.2d at 380. Further, the voluntariness of a consent is a question of fact to be determined from the totality of circumstances. *Bustamonte*, 412 U.S. at 227, 93 S.Ct. at 2047–48. Relevant to this determination are the following characteristics of the person giving consent and the environment in which consent is given: The age of defendant; his general intelligence

and education; whether he was under the influence of a mind-altering substance; whether he was informed of his right to withhold consent or of his *Miranda* rights; the length of time he was detained and questioned; whether he was threatened, physically intimidated, or punished by the police; whether he relied upon promises or misrepresentations made by the police; whether he was in a public or secluded location; and whether he objected to the search or passively looked on. *Chaidez*, 906 F.2d at 381 (citations omitted). These factors are not to be mechanically applied, but rather are "valuable as a guide to analysis." *Id.*

 We review the lower court's determination of whether a voluntary consent to a search was given under the clearly erroneous standard. *United States v. Washington*, 957 F.2d 559, 562 (8th Cir.), *reh'g denied, United States v. Alcorn* (April 15, 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 239, 121 L.Ed.2d 174 (1992). The magistrate judge, whose findings were adopted by the district court, found that Barahona voluntarily consented to the search of his car. Applying the relevant factors, the magistrate judge found that Barahona is an adult of general intelligence; was not under the influence of alcohol or drugs; read the consent to search form which stated he had the right to refuse consent; was detained for a very short time; was not threatened, physically intimidated, or punished; did not rely on promises or misrepresentations made by the police; was not in an unduly coercive environment; and did not object to the search, but actively cooperated in it.

 We specifically note that Barahona was an exceedingly cooperative suspect. After reading the consent to search form printed in Spanish, which he gave no indication he did not understand, he pointed to his car and said, "You can look, sir." Then, without being asked, he retrieved the keys from the ignition, unlocked the electric car doors, motioned with his arms and pointed toward the inside of the car in a manner indicating "look;" he then opened

the trunk, and again motioned with his arms in the same inviting manner. A person's consent may be inferred from his or her words, gestures, and conduct. *United States v. Buettner–Janusch*, 646 F.2d 759, 764 (2d Cir.), *cert. denied*, 454 U.S. 830, 102 S.Ct. 126, 70 L.Ed.2d 107 (1981); *United States v. Griffin*, 530 F.2d 739, 742 (7th Cir.1976). In this case, Barahona's words, gestures, and conduct clearly manifested an intent to consent. Moreover, the surrounding circumstances demonstrate that this consent was the product of "an essentially free and unconstrained choice" by Barahona. Thus, after careful review of the record, we conclude that the finding of voluntary consent is not clearly erroneous.

### C.

Barahona also seeks the suppression of statements he made after his arrest on the ground they were obtained in violation of his *Miranda* right to have counsel present during custodial interrogation. He alleges the law enforcement officers used coercive tactics and ignored his repeated requests for counsel during critical periods of his interrogation.

▓▓▓▓ Once a suspect invokes his right to have counsel present during a custodial interrogation, all questioning must cease until counsel is present. *Miranda v. Arizona*, 384 U.S. 436, 474, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694 (1966). This right is derived from the Fifth Amendment's privilege against self-incrimination, and may of course be waived. *See id.* at 474–75, 86 S.Ct. at 1628. The government bears the burden of proving by a preponderance of the evidence that the defendant knowingly and voluntarily waived this right. *Colorado v. Connelly*, 479 U.S. 157, 168, 107 S.Ct. 515, 522, 93 L.Ed.2d 473 (1986); *United States v. Dougherty*, 810 F.2d 763, 773 (8th Cir.1987). The voluntariness of a waiver depends on the absence of police overreaching, that is, the relinquishment of the

right must have been the result of a free and deliberate choice rather than intimidation, coercion, or deception. *Connelly*, 479 U.S. at 170, 107 S.Ct. at 523; *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 1140–41, 89 L.Ed.2d 410 (1986); *Fare v. Michael C.*, 442 U.S. 707, 726–27, 99 S.Ct. 2560, 2572–73, 61 L.Ed.2d 197, *reh'g denied*, 444 U.S. 887, 100 S.Ct. 186, 62 L.Ed.2d 121 (1979). In determining whether a valid waiver has been made, a trial court must look at the totality of the circumstances in each case, including the background, experience, and conduct of the accused. *Dougherty*, 810 F.2d at 773; *Stumes v. Solem*, 752 F.2d 317, 320 (8th Cir.), *cert. denied*, 471 U.S. 1067, 105 S.Ct. 2145, 85 L.Ed.2d 502 (1985); *Fare*, 442 U.S. at 724–25, 99 S.Ct. at 2571–72.

▓▓▓▓ We review the magistrate judge's factual findings concerning whether Barahona waived his rights under the clearly erroneous standard; however we review the ultimate determination of whether waiver occurred as a question of law subject to *de novo* review. *United States v. Winn*, 969 F.2d 642, 643 (8th Cir.1992); *United States v. Caldwell*, 954 F.2d 496, 504 (8th Cir.), *reh'g denied* (February 18, 1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 65, 121 L.Ed.2d 32 (1992). The magistrate judge found that Barahona expressly stated he understood his *Miranda* rights, and that he never requested an attorney at any time during the questioning[3] or asked that the questioning be stopped. The magistrate judge further found that Barahona was very cooperative throughout the entire incident, noting he testified that he would "help the police to catch the people that had betrayed me." The magistrate judge's findings, particularly his finding that Barahona never requested an attorney at any time during the interrogation, are not clearly erroneous and establish that Barahona waived his right to counsel. Thus, we conclude that the district court

---

**3.** This is a slight overstatement. Barahona in fact requested an attorney during his interview with Immigration Services Special Agent Hamilton. However, Barahona subsequently abandoned that request and consented to interroga-

tion. Moreover, the questioning during the interview was unrelated to the underlying criminal activity, and therefore resulted in no incriminating statements subject to suppression.

**419**

correctly refused to suppress Barahona's statements.

### III.

Lastly, Barahona challenges the one hundred twenty-one (121) month sentence imposed on him. He argues the district court erred in failing to sentence him in accordance with an alleged promise made to him by law enforcement officials in exchange for his cooperation. Barahona claims he agreed to cooperate based on representations made by the officers at the Columbia, Missouri, police station that "if I cooperate with the police, the police will cooperate with me," and that the officers would talk to the judge and arrange for a sentence of no more than roughly one to three years.

Barahona relies upon the holding of *United States v. Hudson,* 609 F.2d 1326, 1329 (9th Cir.1979), for the proposition that a prosecutor is bound by the unauthorized promise or representation of a law enforcement official. Regardless of the validity of this proposition, which we expressly leave unaddressed, it is incumbent upon Barahona to prove in the first instance that a promise was made. *United States v. Marks,* 677 F.Supp. 1337, 1342 (E.D.Mich.1988); *see United States v. Weiss,* 599 F.2d 730, 736 (5th Cir.), *reh'g denied,* 603 F.2d 860 (1979). Absent such a showing, there is no need to examine the nature or enforceability of the promise. *See Weiss,* 599 F.2d at 735. The decision of the district court in determining the existence or absence of the promise is subject to a clearly erroneous standard. *Id.* at 736; *United States v. Calimano,* 576 F.2d 637, 640 (5th Cir.1978); *United States v. Minnesota Mining & Mfg. Co.,* 551 F.2d 1106, 1109 (8th Cir.1977). Deference is afforded the district court in determining matters of credibility. *Minnesota Mining & Mfg. Co.,* 551 F.2d at 1109.

In this case, the district court heard extensive evidence and made a credibility determination that Barahona's claim was not believable. We conclude that this finding is not clearly erroneous and that, therefore, the district court properly sentenced Barahona within the guideline range.

We affirm the judgment of the district court.