UNITED STATES of America, Appellee,

v.

Timothy Alphonso JONES, Appellant.

No. 93–3155.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 11, 1994.

Decided May 4, 1994.

Rehearing and Suggestion for Rehearing
En Banc Denied June 9, 1994.

Philip C. Graham, St. Louis, MO, argued, for appellant.

Thomas Mehan, Asst. U.S. Atty., St. Louis, MO, argued, for appellee.

Before BEAM and MORRIS SHEPPARD ARNOLD, Circuit Judges, and WELLFORD,* Senior Circuit Judge.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

In January, 1992, Timothy Jones was indicted in federal court on one count of bank robbery. Mr. Jones finally went to trial in May, 1993. He was convicted and sentenced to 220 months in prison.

On appeal, Mr. Jones contends that he was deprived of his right to a speedy trial under federal statutes and under the Constitution. He also contends that the trial court should have granted his motion to suppress certain statements made to law enforcement officers and should have denied the admission of certain photographs introduced during the trial. We affirm the trial court[1] in all respects.

### I.

In a case where the defendant pleads "not guilty," trial must begin within 70 days of the indictment or the defendant's first appearance before a judicial officer in the court where the charge is pending, whichever is later. *See* 18 U.S.C. § 3161(c)(1). Certain periods are excluded from the calculation. *See* 18 U.S.C. § 3161(h).

Mr. Jones's trial was set for June 2, 1992. By that time, because of various excludable periods authorized under the statute, only 13 days had elapsed on the speedy trial clock. On June 2, a jury was chosen. Before the jury was sworn, however, the trial court held a hearing on two motions to suppress that were still pending. During that hearing, which took place outside the presence of the jury, Mr. Jones apparently created some type of disturbance (we have no transcript of the proceedings). The trial court took the motions to suppress under advisement and adjourned the trial until the next day. On June 3, without ruling on the motions to suppress, the trial court declared a mistrial *sua sponte* because of Mr. Jones's behavior during the hearing on the previous day. A week later, the trial court ordered a psychiatric examination of Mr. Jones. *See* 18 U.S.C. § 4241(a), § 4241(b), § 4247(b).

■ "Trial" for purposes of speedy trial calculations begins at voir dire. *See, e.g., Government of the Virgin Islands v. Duberry,* 923 F.2d 317, 320–21 (3d Cir.1991); *Unit-*

---

* The HONORABLE HARRY W. WELLFORD, Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

1. The Honorable Stephen Nathaniel Limbaugh, United States District Judge for the Eastern District of Missouri.

ed States v. Fox, 788 F.2d 905, 908 (2d Cir. 1986); *United States v. A–A–A Electrical Co.,* 788 F.2d 242, 246 (4th Cir.1986); *United States v. Crane,* 776 F.2d 600, 603 (6th Cir. 1985); *United States v. Martinez,* 749 F.2d 601, 604 (10th Cir.1984); *United States v. Manfredi,* 722 F.2d 519, 524 (9th Cir.1983); *United States v. Howell,* 719 F.2d 1258, 1262 (5th Cir.1983) (*per curiam* ), *cert. denied,* 467 U.S. 1228, 104 S.Ct. 2683, 81 L.Ed.2d 878 (1984); and *United States v. Gonzalez,* 671 F.2d 441, 443, 443 n. 3 (11th Cir.1982), *cert. denied,* 456 U.S. 994, 102 S.Ct. 2279, 73 L.Ed.2d 1291 (1982). *See also Gomez v. United States,* 490 U.S. 858, 873, 873 n. 26, 109 S.Ct. 2237, 2246, 2246 n. 26, 104 L.Ed.2d 923 (1989), and *United States v. Johnson,* 962 F.2d 1308, 1312 n. 8 (8th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 358, 121 L.Ed.2d 271 (1992), —— U.S. ——, 113 S.Ct. 1418, 122 L.Ed.2d 788 (1993). For speedy trial purposes, then, Mr. Jones's first "trial" was timely.

■ Mr. Jones's retrial did not take place until May 26, 1993. In this appeal, he contends that his retrial was untimely under both the speedy trial statute and the sixth amendment. The speedy retrial clock in this case is governed by 18 U.S.C. § 3161(e), which states that where a defendant "is to be tried again following a declaration ... of a mistrial," retrial must begin within 70 days of "the date the action occasioning the retrial becomes final," not counting the periods of delay authorized by other parts of the statute. The parties seem to agree that Mr. Jones's conduct in the June 2, 1992, hearing, and the consequent psychiatric examination, was "the action occasioning the retrial," *see id.* The court need not decide, then, if that conclusion is correct. Mr. Jones argues that since the psychiatric report was completed on July 8, 1992, retrial should have taken place within 70 days of that time (before September 16, 1992). Since it did not, Mr. Jones asserts, he was deprived of the statutory right to a speedy retrial guaranteed by 18 U.S.C. § 3161(e).

The government responds that the psychiatric report consequent to the declaration of a mistrial was not the "final" event, *see id.,* that would begin the speedy retrial clock.

The government contends that a hearing on the question of competency is required under 18 U.S.C. § 4241(a), *see also* 18 U.S.C. § 4241(c), and therefore that the speedy retrial clock did not begin to run until April 2, 1993, when a hearing on Mr. Jones's competency was finally held. *See, e.g., Henderson v. United States,* 476 U.S. 321, 329–30, 106 S.Ct. 1871, 1876–77, 90 L.Ed.2d 299 (1986). The government also argues that the motions to suppress could not be decided until the question of competency was resolved. The government thus argues that the time between April 2, when the competency hearing resolved the question of Mr. Jones's fitness to stand trial, and the actual retrial date of May 26 was well within the 70 days allowed.

The cover letter accompanying the psychiatric report is dated July 23, 1992, but neither the docket sheets nor the trial court files reflect when the trial court received the report. Nor do the parties offer any illumination on that score. We therefore consider the report to have been received by the trial court on July 23 and calculate the speedy retrial deadline from that day.

■ The psychiatric report submitted to the court indicated that Mr. Jones was competent to stand trial. Under those circumstances, the trial court had the discretion to hold or to forgo an additional hearing on Mr. Jones's competency. *See, e.g., United States v. Goodman,* 590 F.2d 705, 708 n. 5, 709 (8th Cir.1979), *cert. denied,* 440 U.S. 985, 99 S.Ct. 1801, 60 L.Ed.2d 248 (1979); *Durham v. Wyrick,* 545 F.2d 41, 44 (8th Cir.1976) (*per curiam* ); *Belvin v. United States,* 538 F.2d 1335, 1336 (8th Cir.1976) (*per curiam* ), *cert. denied,* 429 U.S. 1100, 97 S.Ct. 1123, 51 L.Ed.2d 549 (1977); *United States v. Dworshak,* 514 F.2d 716, 717 n. 2, 719 (8th Cir. 1975); *Rose v. United States,* 513 F.2d 1251, 1256 (8th Cir.1975) (*per curiam*); *United States v. Maret,* 433 F.2d 1064, 1067 (8th Cir.1970), *cert. denied,* 402 U.S. 989, 91 S.Ct. 1678, 29 L.Ed.2d 155 (1971); and *Krupnick v. United States,* 264 F.2d 213, 217 (8th Cir.1959) (all, however, relating to a previous version of the statute that is slightly different in wording). *See also* 1 C. Wright, *Federal Practice and Procedure: Criminal* 2d § 196 at 727–28 (1982).

The case law is confused with respect to whether a subsequent judicial declaration of competency is necessary. For purposes of certainty, we believe that such a declaration is necessary. With that assumption, we exclude 30 days from the speedy retrial calculation while the question of competency could be considered to have been under advisement. *See* 18 U.S.C. § 3161(h)(1)(J). Since we consider the trial court to have received the psychiatric report on July 23, 1992 (the date of the cover letter), we exclude the period from July 23 through August 22.

Between August 23 and December 1, when Mr. Jones moved for trial subpoenas, nothing happened. (We do not count the government's motion for a competency hearing, made in mid-September, as an event precipitating excludable time, because we have already allowed 30 days for the question of competency to have been under advisement.) That period was 99 days. Mr. Jones's motion was granted on the same day it was made, so December 1, 1992, is excluded. *See* 18 U.S.C. § 3161(h)(1)(F). Retrial was originally set for December 7. The period between December 2 and December 7 is counted. That span was six days.

At that point alone, using July 23, 1992, as the starting date for the retrial clock, 105 days had elapsed (August 23 through November 30, December 2 through December 7). Even so, at that juncture, Mr. Jones had not raised any objection to the length of time until retrial. If retrial had begun on that day, Mr. Jones would be considered to have waived any objection based on his statutory speedy retrial rights. *See* 18 U.S.C. § 3162(a)(2), which specifies that "[f]ailure of the defendant to move for dismissal [based on speedy trial grounds] prior to trial ... shall constitute a waiver of the right to dismissal [on those grounds]." The provision is made applicable to retrials by 18 U.S.C. § 3161(e). *See also United States v. Ferguson*, 776 F.2d 217, 222 (8th Cir.1985), *cert. denied*, 475 U.S. 1020, 106 S.Ct. 1207, 89 L.Ed.2d 320 (1986) (with respect to trial),

and *United States v. Tercero*, 640 F.2d 190, 195 (9th Cir.1980), *cert. denied*, 449 U.S. 1084, 101 S.Ct. 871, 66 L.Ed.2d 809 (1981) (with respect to retrial).

Retrial did not take place on December 7, however, because on that day, Mr. Jones's lawyer moved to withdraw, stating that Mr. Jones had threatened him. Accordingly, Mr. Jones's lawyer also asked at that time for a continuance for Mr. Jones. The trial court granted both motions, suggested to Mr. Jones that he try to find a lawyer, and reset the retrial for January 11, 1993.

Mr. Jones had not found a lawyer by January 11, so on that day the trial court appointed one for him and reset the case for January 25. On January 20, the new counsel for Mr. Jones moved for a continuance; the motion was accompanied by a consent to the continuance signed by Mr. Jones. The trial court granted the motion, but the docket sheets do not reflect a new setting at that time. When the original trial judge[2] took senior status, the case was transferred to a second trial judge. On March 4, an order was entered setting the case for May 24.

On March 31, Mr. Jones moved, for the first time, to dismiss the case on speedy retrial grounds. Since we consider July 23, 1992, to have been the starting point for the retrial clock, the question for this court is whether Mr. Jones's failure to raise a speedy retrial objection with respect to his retrial date of December 7, 1992, also waives his failure to do so after that time, even though the motion was in fact made before his eventual retrial on May 26, 1993.

We do not see why Mr. Jones should be saved from a waiver that would have been effective on December 7, when the reason no retrial took place on that date was because of his own misbehavior. We think it entirely reasonable to construe Mr. Jones's failure to raise speedy trial objections on December 7 as a constructive waiver that extended at least until January 20, when, again without raising any speedy retrial objections, he consented in writing to his lawyer's motion for a

---

**2.** The Honorable Clyde S. Cahill, now Senior United States District Judge for the Eastern District of Missouri.

continuance from the retrial date of January 24.

The period from December 7 through January 10 is excluded from speedy retrial calculations as the "period of delay" occasioned by the grant of the motion for continuance made by counsel for Mr. Jones. *See* 18 U.S.C. § 3161(h)(8)(A); *see also* 18 U.S.C. § 3161(h)(8)(B)(i), § 3161(h)(8)(B)(iv). The period from January 11 through January 24 is excludable as the "period of delay" resulting from what we consider to be the trial court's grant of a continuance on the trial court's own motion. *See* 18 U.S.C. § 3161(h)(8)(A); *see also* 18 U.S.C. § 3161(h)(8)(B)(i), § 3161(h)(8)(B)(iv). We count for speedy retrial purposes, then, solely the period between January 20 and March 4, the day when the case was actually reset for May 24. (We will address the period after March 4 shortly.) That span was only 43 days.

In the alternative, since Mr. Jones states in his brief that his lawyer's motion to withdraw was meritless (*i.e.*, Mr. Jones denies threatening his lawyer), we may deem the trial court's grant of a continuance on December 7 to have been on its own motion. The period from that date through January 10 is still excludable, however, as the "period of delay" resulting from the trial court's grant of that continuance. *See* 18 U.S.C. § 3161(h)(8)(A); *see also* 18 U.S.C. § 3161(h)(8)(B)(i), § 3161(h)(8)(B)(iv). The period from January 11 through January 24 is still excludable as well, for the same reason.

Since Mr. Jones himself agreed in writing to a delay beyond January 24, 1993, without raising any speedy retrial objections, even this alternative scenario suggests a constructive waiver by him of his statutory speedy retrial rights through January 24. We do not see why Mr. Jones should be saved from a waiver that would have been effective on January 24, when the reason no retrial took place on that date was because of a motion for a continuance that he personally consented to in writing. Under our alternative scenario, then, we would count for speedy retrial purposes only the 39–day period between January 24 and March 4, when the case was reset for May 24.

The period between March 4 and May 24 is excludable because it was the result of Mr. Jones's own request for a continuance. *See* 18 U.S.C. § 3161(h)(8)(A); *see also* 18 U.S.C. § 3161(h)(8)(B)(i), § 3161(h)(8)(B)(iv). Retrial actually began on May 26; neither the docket sheets nor the trial court files reflect why the two-day delay occurred. The only additional days that might have accumulated on the speedy retrial clock after March 4, however, are the three days of May 24, 25, and 26. Even those days may be excluded, though, because the trial court had received on May 21 the magistrate's report and recommendations on the speedy retrial question and the motions to suppress, along with Mr. Jones's objections to that report. Allowing up to a 30–day period for those motions, report, and objections to have been under advisement, the time from May 21 through May 26, when the trial court adopted the magistrate's recommendations, is excludable. *See* 18 U.S.C. § 3161(h)(1)(F).

In summary, whether we consider Mr. Jones's waiver of his statutory speedy retrial rights to have taken place on December 7, 1992, or on January 20, 1993, no more than 43 days had elapsed on the speedy retrial clock as of May 26, when retrial began. That span is well within the 70–day period allowed by the statute. *See* 18 U.S.C. § 3161(e). We turn, then, to the sixth amendment arguments offered by Mr. Jones.

The sixth amendment also guarantees a speedy trial. The Supreme Court has stated that the main factors to be considered in an evaluation of whether the constitutional right to a speedy trial has been violated are the length of delay, the reason for the delay, whether the defendant asserted his speedy trial right, and prejudice to the defendant. *See Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2191, 33 L.Ed.2d 101 (1972).

We see no sixth amendment difficulty in this case, since Mr. Jones himself brought on most of the delay after December 7, 1992, by his threatening behavior to his lawyer and his own request for a continuance to allow his lawyer to prepare. Those facts, coupled with

the fact that he raised no speedy retrial objections until March 31, 1993, make us unsympathetic to any sixth amendment claim.

We see, therefore, no speedy retrial claim under either the federal statutes or the Constitution. Accordingly, we affirm the trial court's ruling that Mr. Jones was not deprived of his right to a speedy retrial.

## II.

■ Mr. Jones was arrested on December 26, 1991, for the robbery of a restaurant. He subsequently made statements, both orally and in writing, about the bank robbery with which he was charged in federal court. The number of those statements, which ones were oral and which were written, and which ones are challenged on appeal are not clear from the briefs. Mr. Jones mentions one statement to Officer Peter St. James and two statements to Detective James Wurm. The government mentions a statement to Officer St. James, one to Detective Wurm, and one to Detective Craig Longworth. In a report and recommendations on the motion to suppress the statements, the magistrate mentions a statement to Officer St. James, three to Detective Wurm (two oral, one written), one to Detective Longworth, and one to FBI Agent Steve Kettner.

The magistrate gives the most coherent summary of the apparent facts (we have no transcripts of the hearings on the motion to suppress), although some of the account that follows is derived from trial testimony. Mr. Jones was arrested by Officer St. James in connection with a restaurant robbery (10:00 p.m.). Officer St. James fully advised Mr. Jones of his *Miranda* rights. Mr. Jones stated that he understood his rights; he also stated that he had not committed any robbery. Officer St. James did not question Mr. Jones any further. (No evidence was introduced at trial about a statement to Officer St. James; we therefore ignore the portions of Mr. Jones's argument relating to that statement.) About 15 minutes later, after having been brought to the police station, Mr. Jones was turned over to Detective Wurm (10:15 p.m.). (No evidence was introduced at trial of any statement given by Mr. Jones at that

point to Detective Wurm; we therefore disregard the portions of Mr. Jones's argument relating to such a statement.)

About an hour later, Detective Wurm arranged to put Mr. Jones in a lineup related to a different robbery (11:15 p.m.). After the lineup, Detective Wurm told Mr. Jones that he was a suspect in several other robberies and that he would have to appear in other lineups related to those robberies. According to the magistrate, Detective Wurm did not question Mr. Jones about those robberies but merely told him that he would have to be in other lineups. Mr. Jones then stated that he did not want to be in any other lineups and would talk to Detective Wurm about the other robberies. Mr. Jones then orally admitted having committed five robberies in Detective Wurm's jurisdiction and two others in a different police district. (No evidence was introduced at trial about that oral statement to Detective Wurm; we therefore ignore the portions of Mr. Jones's argument relating to that statement.) Detective Wurm called Detective Longworth and FBI Agent Kettner in relation to the two robberies outside Detective Wurm's jurisdiction. One of those was the bank robbery at issue in this case.

About an hour later, both Detective Wurm and Detective Longworth advised Mr. Jones of all of his *Miranda* rights (by means of a written rights form) and took a written statement from him (12:15 a.m.). Mr. Jones initialed the rights form beside the summary of each of the rights and initialed the waiver of those rights. Mr. Jones admitted the bank robbery in the written statement; he also admitted the robbery orally to Detective Longworth. FBI Agent Kettner interviewed Mr. Jones immediately after Detective Wurm and Detective Longworth interviewed him. We consider that interview to have been essentially contemporaneous with the interrogation by Detective Wurm and Detective Longworth, and Mr. Jones does not contend otherwise. Mr. Jones then gave an oral statement to FBI Agent Kettner.

As noted earlier, we address only the statements that were introduced at trial. Those were the written statements to Detec-

tive Wurm and Detective Longworth and the oral statements to Detective Longworth and to FBI Agent Kettner. No one disputes that Detective Wurm and Detective Longworth fully advised Mr. Jones of his rights before he made the oral and written statements to them and to FBI Agent Kettner that were introduced at trial. What Mr. Jones seems to be disputing is whether those statements were voluntary. Specifically, Mr. Jones seems to be arguing that those statements were inadmissible because they were obtained through coercion, namely, Detective Wurm's threat that Mr. Jones would have to appear in several lineups related to other robberies under investigation.

"Prior to any questioning, [a suspect] must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966); *see also id.* at 467–69, 471, 473, 479, 86 S.Ct. at 1624–25, 1626, 1627, 1630. Once warned, a suspect "may waive effectuation of *[Miranda]* rights, provided the waiver is made voluntarily, knowingly and intelligently." *Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612. "The inquiry [into the validity of a waiver] has two distinct dimensions.... First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the 'totality of the circumstances surrounding the interrogation' reveals both · an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986), quoting *Fare v. Michael C.,* 442 U.S. 707, 725, 99 S.Ct. 2560, 2571, 61 L.Ed.2d 197 (1979). The "totality of the circumstances in each case" may include "the background, experience, and conduct of the [suspect]." *United States v. Barahona,* 990 F.2d 412, 418 (8th Cir.1993). (According to

the presentence report, Mr. Jones has at least 15 years of experience with the criminal justice system, leading to five prior convictions.)

Coercion may be found where "the police fail[] to honor a decision of a person in custody to cut off questioning, either by refusing to discontinue the interrogation upon request or by persisting in repeated efforts to wear down his resistance and make him change his mind." *Michigan v. Mosley,* 423 U.S. 96, 105–06, 96 S.Ct. 321, 327, 46 L.Ed.2d 313 (1975). Coercion may. also be found if there has been "lengthy interrogation or incommunicado incarceration before a statement is made." *Miranda,* 384 U.S. at 476, 86 S.Ct. at 1629. The test for determining the voluntariness of a confession is "whether, in light of the totality of the circumstances, pressures exerted upon the suspect have overborne his will." *United States v. Jorgensen,* 871 F.2d 725, 729 (8th Cir.1989). "In applying the 'overborne will' doctrine, a reviewing court must consider the conduct of the law enforcement officials and the capacity of the suspect to resist pressure to confess." *United States v. McClinton,* 982 F.2d 278, 282 (8th Cir.1992).

Review of a judge's "factual findings concerning whether [a suspect] waived his rights [is] under the clearly erroneous standard; however ... review [of] the ultimate determination of whether waiver occurred as a matter of law ... [is] *de novo.*" *United States v. Barahona,* 990 F.2d at 418; *see also United States v. Caldwell,* 954 F.2d 496, 504 (8th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 65, 121 L.Ed.2d 32 (1992).

After reading the magistrate's report and the trial transcript, we hold that Mr. Jones was fully warned and that he voluntarily waived his *Miranda* · rights in making his written statement to Detective Wurm and Detective Longworth. We also hold that the oral statements made to Detective Longworth and to FBI Agent Kettner were made only after complete warnings and were made voluntarily. All of those statements were therefore properly admissible.

## III.

At trial, the government introduced several still photographs that had been made from individual frames of the bank surveillance videotape. Mr. Jones challenges those photographs, citing the failure of the government to "present any evidence concerning the process used to make the still photographs," inadequate foundation for "the development process" (it is not clear to us if these are the same objection or two separate grounds for objection), and the best evidence rule. Mr. Jones also contends that any probative value from the photographs was substantially outweighed by the possibility of unfair prejudice. *See* Fed.R.Evid. 403. None of his arguments is convincing to us.

## IV.

In a *pro se* brief, Mr. Jones raises several other grounds for appeal. We have considered carefully his arguments, and we reject all of them except for those relating to ineffective assistance of counsel, government interference with Mr. Jones's communication with his lawyer, and harassment of defense witnesses (points VII, VIII, ¶ 1 of X, and XI of Mr. Jones's *pro se* brief). With respect to those points, we note that such arguments are more properly raised in a petition under 28 U.S.C. § 2255, where the relevant facts may be fully developed. *See, e.g., United States v. Kenyon,* 7 F.3d 783, 785 (8th Cir. 1993); *United States v. Petty,* 1 F.3d 695, 695–96 (8th Cir.1993); and *United States v. Thomas,* 992 F.2d 201, 204 (8th Cir.1993). *See also United States v. Echols,* 2 F.3d 849, 850 (8th Cir.1993) (*per curiam*). Accordingly, we decline to address those issues and express no view as to their merits.

## V.

We therefore affirm the trial court and sustain Mr. Jones's conviction.

BEAM, Circuit Judge, concurring.

I fully concur in parts II, III, IV, and V of the court's opinion and in the result reached in this case. I write separately to express my disagreement with the rationales of both Judge Morris Sheppard Arnold and Judge Wellford on the speedy trial issue. This case is controlled by 18 U.S.C. § 3161(h)(1)(A) (delay resulting from any proceeding to determine mental competency is excluded from computation) or 18 U.S.C. § 3161(h)(1)(F) (delay resulting from any pretrial motion, from filing of motion through conclusion of hearing thereon is excluded from computation) and not by 18 U.S.C. § 3161(h)(1)(J) (limiting excludable time to thirty days after a motion is under advisement). The matter of Jones's competency was not "under advisement" at all until after the April 2, 1993, hearing.

As Judge Wellford notes in his concurrence, *infra* at 1316–17, sections 3161(h)(1)(F) and 3161(h)(1)(J) apply differently to pretrial motions that require hearings and those that do not. *Henderson v. United States,* 476 U.S. 321, 329–30, 106 S.Ct. 1871, 1876–77, 90 L.Ed.2d 299 (1986). For pretrial motions that do not require hearings, section 3161(h)(1)(F) excludes time from a motion's filing until either the motion is disposed of or taken under advisement. *United States v. Hohn,* 8 F.3d 1301, 1305 n. 6 (8th Cir.1993). If the court requires time to consider the motion after all the information is available (and the motion is thus "under advisement"), excludable time is limited to thirty days under section 3161(h)(1)(J). *Id.* For motions that require hearings, section 3161(h)(1)(F) excludes all time between the filing of the motion and the conclusion of the hearing at which it is addressed. *United States v. Davenport,* 935 F.2d 1223, 1228 (11th Cir.1991). Then, after the hearing, the matter is "under advisement" and section 3161(h)(1)(J) becomes operative. *Id.*

Crucial to the analysis here is the question of whether a hearing is "required." Judge Morris Sheppard Arnold and Judge Wellford seem to equate "required" with "mandated by statute," while I would give it a broader definition such as "necessary" or "required by the circumstances." Competency evaluations are conducted pursuant to 18 U.S.C. §§ 4241–47. Although the language of the statute seems to contemplate a competency hearing in every case, the cases cited in the court's opinion, *supra* at 1309, hold that a competency hearing is not generally required

in cases, as here, in which an initial finding of competency has been made.[3] That is not to say that a hearing is never necessary in such instances. Although not mandated by statute, a hearing is certainly required if circumstances so dictate. There are many instances in which a hearing is not mandated by either statute or case law but nevertheless may be needed to determine the issues. For example, under the Federal Rules of Civil Procedure, no hearing is required on motions to dismiss or motions for summary judgment. Nevertheless, a judge may find it necessary to grant a hearing on the motion in order to fully develop the record. In those circumstances, whether or not a hearing is technically required, subsection (F) and not subsection (J) would initially apply. Surely, no one would contend the matter was under advisement until the conclusion of the hearing.

This is a case where, though a hearing may not have been technically mandated, the trial court, in its discretion, ordered a hearing. Here, both Judge Morris Sheppard Arnold and Judge Wellford rely on the assertion that "nothing happened" between receipt of the psychiatric report (more particularly, thirty days after its receipt—August 22, 1992) and December 7, 1992, the date the case was set for retrial. To the contrary, something did happen: the government requested a hearing on September 14, 1992. According to the Magistrate Judge, it was the practice of the trial court to hear pending motions at the beginning of trial. *See United States v. Jones*, No. 4:92–CR–11(SNL), Memorandum and Order at 2 n. 1 (E.D.Mo. May 13, 1993). Accordingly, because the request for a hearing was never denied, I assume it was implicitly granted and was set for December 7, 1992, immediately prior to trial. Also, when the district court first ordered the psychological evaluation, it expressly relied on and referred to 18 U.S.C. §§ 4241 and 4247, which define the scope and

conduct of competency hearings. *See United States v. Jones*, No. 4:92–CR–11(SNL), Order for Psychiatric Examination at 1 (E.D.Mo. June 9, 1992). Inclusion of these references stated, or at least implied, that a hearing would take place. Indeed, a competency hearing did eventually occur. *See United States v. Jones*, No. 4:92–CR–11(SNL), Courtroom Minutes (E.D.Mo. April 2, 1993).

My review of the record convinces me that no one—neither the government, the defendant, nor the judge—thought or had any reason to believe that the speedy trial clock was running during this time period. In these circumstances, I am hesitant to rely upon a waiver by defendant. In the court's opinion, Judge Morris Sheppard Arnold states that the trial court was free to either hold or forego a hearing on the competency issue. *Supra* at 1309. While that proposition of law may be correct, nothing in this record shows any intention by the trial court to forego the hearing. In fact, the opposite is true, as shown by the filing of a request for a hearing and the fact that such hearing occurred on April 2, 1993. While a hearing may not have been required under our precedents, it is certainly not precluded. It is within the trial judge's discretion to set a hearing, which he did in this case.

I am reluctant to further cloud the often murky waters of speedy trial calculations. As it stands, parties and courts understand that once a motion is filed, the speedy trial clock is stopped until the matter is "under advisement." The moment at which a matter comes "under advisement" is usually marked by some bright-line event such as conclusion of a hearing; the end of a briefing schedule; or a judicial declaration. To start the clock again at some mysterious and previously undefined point—here, thirty days after the receipt of a psychiatric report that was never

---

3. I note that these cases stand only for the proposition that a defendant cannot challenge his conviction or premise a habeas action on the denial of a competency hearing. None of these cases involve Speedy Trial Act computation. *See United States v. Goodman*, 590 F.2d 705, 708 n. 5 (8th Cir.) (habeas), *cert. denied*, 440 U.S. 985, 99 S.Ct. 1801, 60 L.Ed.2d 248 (1979); *Belvin v. United States*, 538 F.2d 1335, 1336 (8th Cir.1976) (per curiam) (habeas), *cert. denied*, 429 U.S. 1100, 97 S.Ct. 1123, 51 L.Ed.2d 549 (1977); *United States v. Dworshak*, 514 F.2d 716, 717 n. 2, 719 (8th Cir.1975) (challenge to conviction); *Rose v. United States*, 513 F.2d 1251, 1256 (8th Cir.1975) (per curiam) (habeas); *United States v. Maret*, 433 F.2d 1064, 1067 (8th Cir.1970) (challenge to conviction), *cert. denied*, 402 U.S. 989, 91 S.Ct. 1678, 29 L.Ed.2d 155 (1971).

even filed with the clerk of the district court—will only confuse Speedy Trial Act jurisprudence in this circuit.

I would thus find that all the time between the order for psychiatric examination on June 9, 1992, and the hearing on the matter on April 2, 1993, is excluded from calculation for speedy trial purposes under either section 3161(h)(1)(F) or section 3161(h)(1)(A). This would comport with *Henderson,* 476 U.S. at 329, 106 S.Ct. at 1876, and cases that apply its rationale in the context of competency hearings. *See, e.g., United States v. Vasquez,* 918 F.2d 329, 333 (2d Cir.1990) ("[a]fter the [Supreme] Court's decision in *Henderson,* we read its rationale requiring an automatic exclusion to apply as well to subsection (h)(1)(A) concerning competency proceedings of defendant"), and *United States v. Antwine,* 873 F.2d 1144, 1149 n. 7 (8th Cir.1989) (delays as a result of competency proceedings are excluded).

WELLFORD, Senior Circuit Judge, concurring.

While I concur in parts II, III, IV, and V of Judge Arnold's opinion, and I concur in the result reached in this decision, I write separately to express my concern in this case about the unexplained delay of the district court in taking any action after receiving the psychiatric report on Jones's competence in July, 1992. I recognize that in overruling this circuit's decision in *United States v. Ray,* 768 F.2d 991 (8th Cir.1985), the Supreme Court, in *Henderson v. United States,* 476 U.S. 321, 106 S.Ct. 1871, 90 L.Ed.2d 299 (1986), held that Congress intended to exclude from the Speedy Trial Act's seventy day limitation all the time between the filing of a motion and the conclusion of the hearing on that motion, whether or not a delay in holding that hearing is "reasonably necessary." 476 U.S. at 330 (referring to § 3161(h)(1)(F)).

In *Henderson,* the Supreme Court noted that subsection (F) excludes time in two situations: "The first arises when a pretrial motion requires a hearing: subsection (F) on its face excludes the entire period between the filing of the motion and the conclusion of the hearing." *Id.* at 329, 106 S.Ct. at 1876.

"The second situation concerns motions that require no hearing and that result in a 'prompt disposition.'" *Id.* In the second situation, the promptness requirement was "intended to provide a point at which time will cease to be excluded, where motions are decided on the papers filed without hearing." *Id.* The "point at which time will cease to be excluded" is defined by subsection (J), "which permits an exclusion of thirty days from the time a motion is actually 'under advisement' by the court." *Id.* (referring to 18 U.S.C. § 3161(h)(1)(J)).

While I realize that the above language in *Henderson* is arguably dicta, since *Henderson* addressed a pending motion to suppress which requires a hearing; I, nevertheless, believe that the Court's rationale is instructive in this case. It is clear in this circuit that once a defendant has been determined to be competent to stand trial, a hearing on competency is not required. *See United States v. Goodman,* 590 F.2d 705, 708 n. 5 (8th Cir.), *cert. denied,* 440 U.S. 985, 99 S.Ct. 1801, 60 L.Ed.2d 248 (1979). Therefore, I agree with Judge Arnold that subsection (J)'s thirty day exclusion is applicable. Therefore, I concur with Judge Arnold that the Speedy Trial clock began to run from August 22 through December 7, 1992, during which time the district court took no action.

The defendant, on December 7, 1992, did say to the court that "I am not using any sort of delaying tactics, it is not my intent to get this trial postponed." He claimed a due process violation because of the "delay ... for a psychiatric evaluation." I construe his December objection to relate to the earlier order for a competency examination. The district court, however, on its own motion in the exercise of its discretion, and I believe in the interest of justice, had ordered a psychiatric examination to be satisfied about the defendant's competency to stand trial. *See United States v. Antwine,* 873 F.2d 1144, 1149 n. 7 (8th Cir.1989) (excluding delay resulting from proceedings to determine competency under 18 U.S.C. § 3161(h)(1)(A)). It was the later delay until December 7, 1992, however, that caused the potential problem in this case. While the defendant and his counsel may have waived a legitimate speedy trial objec-

tion before December 7, 1992, the successful prosecution of this often arrested defendant may have been placed in jeopardy by the district court's inexplicable failure to act. Nevertheless, I conclude that the defendant failed to make a timely objection specifically challenging the delay between the receipt of the psychiatric report and the December 7, 1992, trial date. Therefore, I agree with Judge Arnold that the defendant waived his statutory right to a speedy trial.

Accordingly, I concur in the judgment.