# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued November 10, 2014        Decided January 20, 2015

No. 11-3074

UNITED STATES OF AMERICA,
APPELLEE

v.

MELVIN TAPLET, JR.,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cr-00338)

*Allen H. Orenberg* argued the cause for appellants.

*John Cummings*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Ronald C. Machen*, *Jr.*, U.S. Attorney, and *Elizabeth Trosman*, *Suzanne G. Curt*, and *Anthony Scarpelli*, Assistant U.S. Attorneys.

Before: BROWN, *Circuit Judge*; WILLIAMS and GINSBURG, *Senior Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* BROWN.

2

BROWN, *Circuit Judge.* Melvin Taplet Jr. was convicted of soliciting murder for hire using interstate commerce facilities in violation of 18 U.S.C. § 1958. We affirm.

I

A

Danielle Buck did what most good friends do. When her friend and neighbor, Kimberly McLaughlin, began a romantic liaison with Taplet and allowed him to move in, Buck noticed unhealthy changes in her friend's demeanor. She encouraged her to end the relationship.

Her friend listened. But while the relationship ended, Taplet's rage toward Buck festered and grew. In August 2008, Taplet told his troubles to Jerome Thomas, a stranger he met at a truck stop. Taplet explained how his relationship with Buck's friend had soured due to Buck's interference, and how he wished he could "have something seriously done to her." Rather than brushing it off as bluster, Thomas responded that he could "take care" of Buck for $7,000 to $10,000. Taplet was receptive and gave Thomas his cell phone number. Unbeknown to Taplet, Thomas worked as a paid informant for the Department of Homeland Security, Immigration and Customs Enforcement ("ICE").

Taplet and Thomas discussed the murder-for-hire over the phone and in person. At one meeting, Taplet reaffirmed his desire to have Buck killed and provided Thomas with a piece of paper showing McLaughlin's address in Maine, an apartment directly across the hall from Ms. Buck's, and including the notation "Danielle." A few days later, Thomas called Taplet's cell phone and set up a meeting at a truck stop in Elkton, Maryland, where Taplet provided the name of a

secluded town near the Canadian border where Thomas could kill Buck and dispose of her body. He also provided a photo of Buck.

Thomas, claiming to be a drug dealer, asked Taplet to weld a hidden compartment into a car as partial payment for the murder-for-hire. Taplet met Thomas in Maryland. Following Thomas's instructions, Taplet drove to the parking lot of Robert F. Kennedy Stadium in Washington, D.C., where ICE Special Agent Tony Rodriquez, posing as Thomas's hitman partner, joined them. Taplet could not successfully complete the welding project in the parking lot, but the three of them still agreed Thomas and Rodriquez would murder Buck in exchange for future payment, while Taplet—needing an airtight alibi—was at work in West Virginia.

B

On February 3, 2009, the district court arraigned Taplet on one count of murder-for-hire. Three times prior to trial, Taplet moved to dismiss the indictment on Speedy Trial Act ("STA" or "Act") grounds. *See generally* 18 U.S.C. § 3161. Taplet, however, did not seek to dismiss the indictment on constitutional grounds. The district court denied Taplet's speedy trial motions, and his trial began on February 14, 2011.

Taplet moved for acquittal contending there was insufficient evidence of the interstate commerce requirement because the government had manufactured jurisdiction. Taplet also requested a special jury instruction on manufactured jurisdiction. The district court denied both and the jury found Taplet guilty.

The district court determined Taplet's recommended Sentencing Guideline range was 262 to 327 months, and then sentenced Taplet to ten years in prison, the statutory maximum for a murder-for-hire offense.

II

Taplet aims several animadversions at his conviction and sentence but only one comes close to hitting the mark: his claim under the Speedy Trial Act. The Court reviews a challenge under the STA de novo on questions of law and for clear error on questions of fact. *See United States v. Rice*, 746 F.3d 1074, 1077 (D.C. Cir. 2014).

The Act establishes a general rule: if a court does not bring a defendant to trial within seventy days after indictment or arraignment, the court "shall" dismiss the indictment on "motion of the defendant." 18 U.S.C. § 3162(a)(2). The Act, however, "exclude[s]" from its seventy-day limit certain periods of pretrial delay. *Id*. § 3161(h). The time a trial court takes to decide a "pretrial motion," for example, does not count toward the seventy-day limit. *Id*. § 3161(h)(1)(D). If the court holds a hearing on a motion, the Act excludes the time between the filing of the motion and the conclusion of the hearing. *United States v. Van Smith*, 530 F.3d 967, 969 (D.C. Cir. 2008).

Not all motions filed pretrial count as a "pretrial motion" under the Act. In a series of cases, we have held that government evidentiary filings that invoke Federal Rules of Evidence 404(b) and 609, even if styled as "motions," do not qualify as pretrial motions. *E.g.*, *United States v. Marshall*, 669 F.3d 288, 294–95 (D.C. Cir. 2011) (holding that government's motion to admit evidence of other crimes under Federal Rule of Evidence 404(b) was not a pretrial motion);

*Van Smith*, 530 F.3d at 970–71 (holding that the government's Federal Rule of Evidence 609 notice was not a pretrial motion); *United States v. Harris*, 491 F.3d 440, 444 (D.C. Cir. 2007) (same). By contrast, when a defendant files an opposition to the government's evidentiary filing, it counts as a pretrial motion. *See Harris*, 491 F.3d at 444.

Taplet's STA clock began when he was arraigned on February 3, 2009. *See* 18 U.S.C. § 3161(c)(1). His trial did not begin until February 14, 2011. The question is whether seventy days of non-excludable time passed between those dates.

A

Two time periods were not excludable. The first ran from February 3, 2009 to March 25, 2009. The district court did not toll this time under any STA provision, and the government concedes that these fifty days were non-excludable.[1] The second non-excludable period ran from September 11, 2009, when the government filed motions to admit evidence under Federal Rules of Evidence 404(b) and 609, until September 25, 2009, when Taplet opposed those motions. The government concedes, as it must, that the fourteen days after it filed its evidentiary motion were non-excludable. *See Harris*, 491 F.3d at 444; *Marshall*, 669 F.3d at 294-95. Because the government conceded sixty-four days of non-excludable time at the outset, Taplet can establish a

---

[1] Although the government "agree[d]" that this time period was non-excludable, it nevertheless argued that Taplet waived a portion of it because he failed to argue the period from February 3, 2009 to March 3, 2009 was excludable before the district court. *See* Brief for Appellee at 26, United States v. Taplet, No. 11-3074 (D.C. Cir. Mar. 12, 2014). We address the issue of waiver in Section II.C.

violation of the STA if he shows six additional days of non-excludable time. But, the task is easier said than done.

B

Taplet contends both the ninety-three days between October 26, 2009 and January 27, 2010, and the twelve days between May 14 and May 25, 2010, were non-excludable. As to the first, Taplet filed an opposition to the government's motion to admit evidence on September 25, 2009, and the court held a hearing to decide the motion on May 18, 2010. The ninety-three days do not count against the speedy trial clock because the Act excludes the time "from the filing of the motion through the conclusion of the hearing" on the motion. 18 U.S.C. § 3161(h)(1)(D); *see Rice*, 746 F.3d at 1080. The second period from May 18th to 24th were excludable because Taplet filed a reconsideration motion on May 18, 2010, and the court denied that motion without a hearing on May 24, 2010. When a district court decides a pretrial motion without holding a hearing, up to thirty days may be excluded after the court receives the materials necessary to decide the motion. *See* 18 U.S.C. § 3161(h)(1)(H) (providing for the exclusion of "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court"); *Van Smith*, 530 F.3d at 969. Finally, May 25, 2010, is excludable because Taplet filed a motion to continue the trial on May 24, which the court granted after a hearing on May 25. *See* 18 U.S.C. § 3161(h)(1)(D).

C

Taplet further contends the twenty-eight days from January 18, 2011 to February 14, 2011 were non-excludable.[2] But it is unclear whether Taplet can seek review of his STA claim if he failed to make proper and timely objections.

In his first motion to dismiss, Taplet failed to allege that the twenty-eight days from February 3, 2009 to March 3, 2009 were non-excludable. And although Taplet raised three separate STA objections, he failed to renew a motion to dismiss after January 18, 2011, thus failing to object to the twenty-eight-day continuance from January 18 to February 14, 2011. The government argues that, on the basis of 18 U.S.C. § 3162(a)(2), Taplet's failure to properly identify and timely object constitutes a complete waiver of the STA's protections. If, however, forfeiture rather than waiver applies, Taplet could at least seek plain error review.

We have not previously addressed whether a defendant's failure to raise a particular period of non-excludable time in a motion to dismiss amounts to waiver or forfeiture. *See United States v. Taylor*, 497 F.3d 673, 676 n.3 (D.C. Cir. 2007) (acknowledging the issue but declining to address it); *Marshall*, 669 F.3d at 295 (applying plain error review on a STA ineffective assistance of counsel claim without discussing any potential waiver). Section 3162(a)(2) states that the "[f]ailure of the defendant to move for dismissal prior

---

[2] The government insists the time period between January 18 and February 14, 2011 was excludable because it filed a motion in limine to permit jurors to use transcripts of undercover recordings during its deliberations, and this motion was pending until the court decided it at trial. Because we find this time period waived, there is no need to address whether it was excludable.

to trial … shall constitute a waiver of the right to dismissal under this section." But has a defendant who otherwise moves for dismissal without renewing prior STA claims failed to "move for dismissal prior to trial?" Has he relinquished the ability to challenge that particular time period on appeal?[3]

Recent precedent from three circuits suggests that the failure to raise specific non-excludable time periods in a motion to dismiss constitutes waiver. *See United States v. Loughrin*, 710 F.3d 1111, 1120–21 (10th Cir.) *cert. granted on different question*, 134 S. Ct. 822 (2013), *and aff'd*, 134 S. Ct. 2384 (2014) (holding that waiver rather than forfeiture applies); *United States v. Gates*, 709 F.3d 58, 68 (1st Cir.) *cert. denied*, 134 S. Ct. 264 (2013) ("To avoid a finding of waiver, therefore, a defendant must raise any potential STA violations before the district court in a motion to dismiss."); *United States v. O'Connor*, 656 F.3d 630, 637-38 (7th Cir. 2011) (suggesting waiver but ultimately applying plain error review). These circuits reasoned that since "spotting" STA violations is a role assigned to defendants, "it follows that any specific violation not raised in a motion to dismiss is waived." *O'Connor*, 656 F.3d at 638 (citing *Zedner v. United States*, 547 U.S. 489, 502–03 (2006)). Waiver, they concluded, was also appropriate for policy reasons, noting that plain error review "would force the court on a motion to dismiss for STA violation to consider every conceivable basis for challenging its orders of continuance and exclusions of time, for fear that

---

[3] The legislative history largely repeats the statutory language and is agnostic on the particular question before us: "[a] defendant must move to dismiss the case prior to trial, entry of a plea of guilty or nolo contendere, or he waives the right of dismissal with prejudice on grounds that the requirements of this legislation were not met." H.R. REP. NO. 93-1508, *reprinted in* 1974 U.S.C.C.A.N. 7401, 7416.

the defendant would raise new arguments on appeal." *Loughrin*, 710 F.3d at 1121.

On the other hand, finding waiver where the statute is less than explicit upsets the general rule of forfeiture employed in criminal cases. *See United States v. Olano*, 507 U.S. 725, 733–34 (1993) (explaining that errors affecting substantial rights may be considered even though they were not brought to the district court's attention). It is certainly true that the Act puts the onus on the defendant to come forward with a STA challenge. But the same is true of most criminal rules, statutes, and constitutional provisions under our adversarial system. And waiver is rarely assumed absent an express colloquy or conduct so unequivocal its import could not be mistaken. Forfeiture is the normal rule. *See* FED. R. CRIM. P. 52(b); *United States v. Greer*, 527 F. App'x 225, 229 (3d Cir. 2013) *cert. granted, judgment vacated on other grounds*, 134 S. Ct. 1875 (2014).

We think there are good reasons to find waiver where a defendant has failed to identify particular exclusions of time or failed to renew an STA objection. To begin with, Section 3162(a)(2) states that a "[f]ailure of the defendant to move for dismissal prior to trial" constitutes waiver. Implicit in the requirement that a defendant "move for dismissal" is the requirement that the defendant specify the reason for the motion. *See* FED. R. CRIM. P. 47(b) ("A motion must state the grounds on which it is based."). When a defendant fails to specify the particular exclusions of time within his or her motion to dismiss, the defendant has failed to move for dismissal on that ground. And when a defendant fails to renew an objection after a period of non-excludable time has passed, the defendant has, in effect, not moved for dismissal at all.

By requiring defendants to notify district courts of any potential exclusions of time within their motions to dismiss and requiring them to renew their motions, waiver also prevents "undue defense gamesmanship," *Zedner*, 547 U.S. at 502-03. The STA is different from most rights in that a meritorious STA claim, in theory, could often meet plain error review. Due to its mechanical nature, a meritorious STA claim will always be plain to a reviewing court and will always affect substantial rights. *See Zedner*, 547 U.S. at 503 n.5 ("[E]ven if a case is dismissed without prejudice, a defendant may derive some benefit.").[4] Defendants therefore have an incentive to withhold meritorious non-excludable time in their motions to dismiss on the chance that if their trials go badly, plain error review of an STA claim will act as a one-time reset button. Because this potential for a second bite of the apple is unusually attractive, the potential for gamesmanship is apparent. Section 3162(a)(2)'s waiver provision thus provides a strong incentive, forcing defendants to raise all non-excludable time periods in their motions to dismiss, which in turn allows district courts to dismiss indictments for STA violations before the court and the government devote substantial resources to trial and sentencing. *See Zedner*, 547 U.S. at 507 n.6 (noting that the § 3162(a)(2) requirement restricts defendant's "ability to use such a motion for strategic purposes," by, for example, waiting "to see how a trial is going (or how it comes out) before moving to dismiss.").

We follow our sister circuits in holding that defendants waive a period of non-excludable time if they fail to raise it in their motion to dismiss or fail to renew their STA claims prior

---

[4] Of course, a defendant would still need to show the error affected the "fairness, integrity, or public reputation of judicial proceedings." *Olano*, 507 U.S. at 732.

to trial. And because Taplet failed to identify or renew objections to two potentially non-excludable periods of time, he cannot establish that the seventy-day limit was violated between his arraignment and trial.

## III

Taplet's remaining claims challenging his conviction and sentence require far less discussion.

## A

Taplet claims the delays in his case violated his constitutional right to a speedy trial, but because he did not advance the constitutional claim before the district court, we review only for plain error. *See Rice*, 746 F.3d at 1081.

The district court did not commit an error, let alone one that was plain. Although a delay of more than two years is "presumptively prejudicial," *Doggett v. United States*, 505 U.S. 647, 651–52 & n.1 (1992), longer delays have been deemed constitutionally acceptable, *see United States v. Lopesierra-Gutierrez*, 708 F.3d 193, 202–03 (D.C. Cir.) *cert. denied*, 134 S. Ct. 330 (2013) (finding no violation in case where the delay was "three-and-a-half years"). Taplet either joined in or requested many of the continuances, and he waited fourteen months after his arraignment before filing a motion to dismiss under the Speedy Trial Act. *See Rice*, 746 F.3d at 1082 (holding that defendant's assertion of his rights nearly a year after his arraignment "cuts decidedly" against him). Taplet also failed to offer a concrete explanation on how the delays prejudiced his defense. *See Barker v. Wingo*, 407 U.S. 514, 523 (1972) (employing multi-factor test that asks whether the defendant suffered prejudice from the delay).

B

Taplet next claims there was insufficient evidence of the interstate commerce element because, under *United States v. Archer*, 486 F.2d 670 (2d Cir. 1973), the government impermissibly manufactured jurisdiction when its confidential informant convinced Taplet to drive from Maryland into the District of Columbia.

The government's proof showed Taplet had provided his cell phone number to Thomas, and they had several conversations over the phone in furtherance of the murder-for-hire scheme. That proof alone was sufficient evidence to show that Taplet used a facility of interstate commerce with the intent to commit a murder-for-hire. *See United States v. Weathers*, 169 F.3d 336, 341 (6th Cir. 1999) ("It is well established that telephones, even when used intrastate, constitute instrumentalities *of* interstate commerce.") (emphasis in original); *United States v. Evans*, 476 F.3d 1176, 1180 (11th Cir. 2007) (holding that telephones and cellular telephones are instrumentalities of interstate commerce).

Nor can Taplet prevail on his *Archer* manufactured jurisdiction defense. Taplet voluntarily crossed state lines in order to provide the government informant with welding services as payment for the murder-for-hire. Taplet "freely participate[d]" in the jurisdictional act, so he cannot now claim that the government manufactured jurisdiction. *United States v. Peters*, 952 F.2d 960, 963 n.6 (7th Cir. 1992).

C

Defense counsel requested a special jury instruction regarding the interstate element, stating that the jury should

consider only the actions Melvin Taplet took "alone and independent of the action(s) of, or assistance of the confidential informant or any other government agent in carrying out the scheme." J.A. 622. But that was not the law. The murder-for-hire statute creates liability even for those who "use[ ] or cause[ ] *another* … to use … any facility of interstate or foreign commerce, with intent that a murder be committed." 18 U.S.C. § 1958(a) (emphasis added).

D

At the sentencing hearing, Taplet indulged in a discursive allocution. For twenty minutes, he read from an "affidavit of truth," rambled on about a number of alleged trial errors, and complained of a broad conspiracy against him. The district court instructed Taplet to limit his remarks to sentencing matters. When Taplet persisted in reading the affidavit, the court accepted the affidavit as part of the record and insisted that Taplet address only issues related to sentencing. Taplet finally obliged.

Taplet alleges the district court erred in prematurely ending his allocution. Sentencing judges have discretion to end or redirect allocution where the defendant strays into matters unrelated to sentencing. *See United States v. Alden*, 527 F.3d 653, 663 (7th Cir. 2008); *United States v. Muniz*, 1 F.3d 1018, 1025 (10th Cir. 1993). The district court here did just that. The court heard Taplet read for twenty minutes from a prepared statement alleging numerous trial errors and an ominous conspiracy against him. The court eventually stopped Taplet and attempted to redirect his objections to those relevant to sentencing. When Taplet stubbornly continued reading his trial objections, the court offered to accept the affidavit as part of the record. When Taplet persisted, the court stopped him and ordered him to "either

discuss the appropriate sentence or not." J.A. 990. The district court did not abuse its discretion in finally saying enough is enough.

E

Taplet failed to raise a claim that his sentence was procedurally unreasonable, so we review for plain error. *See United States v. Russell*, 600 F.3d 631, 633–34 (D.C. Cir. 2010). He contends the district court failed adequately to articulate its rationale for sentencing and placed inappropriate weight on the Sentencing Guideline range.

Before announcing the sentence, the court noted the evidence against Taplet was overwhelming and Taplet failed to show any remorse. The court also announced that the sentence was necessary to protect the public; the sentence would serve to deter Taplet from repeating this conduct; and the sentence would deter others from seeking to hire third parties to commit murder. That explanation was sufficient.

The district court also did not place undue weight on the Guidelines. The court, for example, did not state that the Guidelines were legally binding. The court simply calculated that Taplet's recommended Guideline range for the murder-for-hire offense was 262 to 327 months and then proceeded to sentence Taplet well below that range, albeit to the statutory maximum.

IV

For the foregoing reasons, the district court's judgment is

*Affirmed.*