# United States Court of Appeals
### For the Eighth Circuit

_____

No. 24-2451
_____

United States of America

*Plaintiff - Appellee*

v.

Markhel D'John Harris-Franklin

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: February 12, 2025
Filed: July 24, 2025
_____

Before SMITH, KELLY, and KOBES, Circuit Judges.
_____

SMITH, Circuit Judge.

Markhel D'John Harris-Franklin was charged with being an armed career criminal in possession of ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). Prior to trial, Harris-Franklin moved to dismiss the indictment, alleging a violation of the Speedy Trial Act and that 18 U.S.C. § 922(g)(1) is unconstitutional

under the Second Amendment. The district court[1] denied Harris-Franklin's dismissal motions. Harris-Franklin proceeded to trial, and the jury found him guilty. Harris-Franklin now appeals the district court's denial of his dismissal motions. We affirm.

## I. *Background*

In September 2022, Harris-Franklin was indicted by a federal grand jury on two counts of possessing ammunition as a felon and an armed career criminal, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). Count 1 concerned Harris-Franklin's June 2022 shooting of a woman who was holding her infant son while sitting on the front steps of a St. Paul, Minnesota apartment building. Count 2 concerned law enforcement's recovery of ammunition found in a 9mm Polymer80 handgun and elsewhere in Harris-Franklin's vehicle at the time of his arrest. He was also charged in state court with attempted second-degree murder and second-degree assault stemming from the June 2022 shooting. He made his initial appearance in federal court on September 26, 2022. R. Doc. 5.

On October 18, 2022, Harris-Franklin moved the district court for a continuance of the due date for filing pretrial motions. R. Doc. 14. On October 31, the district court granted the motion to extend the time for filing pretrial motions and found "that the ends of justice served by the granting of the requested continuance outweigh[ed] the best interests of the public and [Harris-Franklin] in a speedy trial." R. Doc. 15, at 1. The district court ordered all motions to be filed by November 8, 2022.

---

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota, denied Harris-Franklin's dismissal motions. R. Doc. 59. Judge Montgomery subsequently recused from the case. R. Doc. 60. The case was reassigned to the Honorable Katherine M. Menendez, United States District Judge for the District of Minnesota. *Id.*

On November 8, 2022, Harris-Franklin filed his second motion to extend the time for filing pretrial motions. R. Doc. 16. On November 14, the district court granted the second motion to extend the time for filing pretrial motions. R. Doc. 17. It again found that the ends of justice were served by granting the continuance. The district court ordered all motions to be filed by November 22, 2022. On that date, Harris-Franklin filed a letter indicating that he would not be filing any pretrial motions. R. Doc. 18. The government filed a discovery motion and request for notice of certain defenses. R. Doc. 19. The district court took the government's motion under advisement. *See* 18 U.S.C. § 3161(h)(1)(D). The district court had 30 days of excludable time to adjudicate the motion. *See id.* § 3161(h)(1)(H) (permitting exclusion of 30 days from the time a motion is "actually under advisement by the court"). The passage of 30 days occurred on December 23, 2022.

After the parties indicated to the district court that they were attempting to negotiate a global resolution to both the state and federal charges pending against Harris-Franklin, the court scheduled a status conference for January 18, 2023, to discuss either a resolution or a trial date. R. Doc. 21. The morning of that hearing, the court was informed that Harris-Franklin refused to be transported to the courthouse. The district court rescheduled the hearing for two weeks later, on February 1, 2023. R. Doc. 22.

On February 1, 2023, the district court held the status conference. R. Doc. 23. Later that same day, the government moved for a competency determination. R. Doc. 24. The district court granted the motion on February 6, ordering the Bureau of Prisons (BOP) to evaluate Harris-Franklin's mental competency to proceed. R. Doc. 25. Harris-Franklin was transported to the Federal Detention Center in Englewood, Colorado, where he was examined on multiple occasions in February and March 2023.

On April 27, 2023, a BOP psychologist submitted the mental competency report to the court, opining that Harris-Franklin did suffer from mental illnesses but that these diagnoses did not establish incompetency at that time. *See* R. Doc. 26. On that same date, the district court scheduled a status conference for May 17, 2023. R. Doc. 27.

At the status conference on May 17, 2023, the district court first addressed Harris-Franklin's mental competency evaluation. The district court stated:

> Since we were last in court some time ago, I ordered a forensic evaluation to be done of you, Mr. Harris-Franklin, to evaluate whether you were competent to proceed to trial. That report has now been returned to the [c]ourt, and I believe both counsel have had an opportunity to review it.

R. Doc. 40, at 2. When Harris-Franklin indicated that he had not reviewed the report but would like to, the court provided him with a copy and afforded him time to review it. After Harris-Franklin reviewed the report, he commented that the court had "sen[t] [him] on a frivolous mental health evaluation." *Id.* at 7. The court replied:

> That was a decision that I made, and you can make a motion about that or something, but I'm trying to figure out how to go forward. *And my understanding is, whether that was frivolous or not, you've been found to be competent at trial.* So I'm trying to figure out how to get you a trial and how we can next proceed with your case.

*Id.* (emphasis added).

Also during the hearing, Harris-Franklin indicated his dissatisfaction with his current counsel and orally moved to remove his counsel from the case. In support, he told the district court that his attorney "refused to make arguments on [his] behalf, file

-4-

motions like [he] asked him to." *Id.* at 5–6. The district court asked Harris-Franklin how he would like to proceed, and Harris-Franklin responded that his preference was for the federal public defender to appoint another attorney. The court granted Harris-Franklin's motion to remove counsel but took under advisement Harris-Franklin's motion to have the federal public defender appoint another attorney. The court explained that it would need time to consult with the federal public defender about appointment of new counsel. The district court also explained to Harris-Franklin why appointment of new counsel would require additional time to file pretrial motions, stating:

> And you want a trial, after [counsel] gets appointed, as soon as possible, but you have, as I understand, some motions you want that attorney to bring as well.
>
> .    .    .
>
> I'll need to hear those motions, and at the conclusion of those motions, I'll set a trial date at that time. So effectively, we're going to have a little time built in here for you to get acquainted with a new attorney and for them to bring the new motions, if any. Understood?

*Id.* at 10–11. Harris-Franklin indicated that he understood and that he agreed to this course of action. The court then stated, "And so you're giving up your speedy trial acts [sic] until we can get a new attorney involved in your case. Is that true?" *Id.* at 11. Harris-Franklin responded, "No. . . . It should happen in a timely manner." *Id.* The court responded that it would appoint new counsel "in the next day or two." *Id.* The court again asked Harris-Franklin if that is what he "want[ed] to have happen," and Harris-Franklin responded, "Right." *Id.* The district court then stated, "Okay. And then they'll bring the motions and then I'll need some time to review the motions and rule on the motions." *Id.* Harris-Franklin again responded, "Right." *Id.* At the hearing, the district court did not set a firm date by which the defense must file its motions.

On May 31, 2023, the district court appointed new counsel. R. Doc. 33. The government provided defense counsel with a copy of discovery the following day, as well as a letter stating the government's positions on various discovery matters. Defense counsel did not thereafter file any pretrial motions; instead, counsel filed a motion for leave to file pretrial motions on July 11. R. Doc. 34. The next day, the district court granted the motion and found that the ends of justice were served by granting the continuance. R. Doc. 35. The district court directed Harris-Franklin to file all motions on or before August 1.

On August 1, 2023, Harris-Franklin moved to dismiss the indictment for violation of the Speedy Trial Act. R. Doc. 37. In a separate motion to dismiss, he also challenged the constitutionality of 18 U.S.C. § 922(g)(1) based on the Second Amendment. R. Doc. 36. The magistrate judge held a hearing on the motions on August 23. R. Doc. 46.

On October 2, 2023, the magistrate judge issued a report and recommendation (R&R), recommending that the district court deny the dismissal motions. R. Doc. 54. The court first noted that this court's precedent foreclosed Harris-Franklin's Second Amendment arguments. R. Doc. 54, at 3–4 (citing *United States v. Jackson* (*Jackson I*), 69 F.4th 495 (8th Cir. 2023); *United States v. Cunningham* (*Cunningham I*), 70 F.4th 502, 506 (8th Cir. 2023)). With respect to the Speedy Trial Act, the magistrate judge examined "each block of time," *id.* at 7, that Harris-Franklin alleged was non-excludable and found "that only 19 days ha[d] accrued on the speedy trial clock," *id.* at 18. The next day, Harris-Franklin filed objections to the R&R but did not advance any new arguments. R. Doc. 55.

On November 15, 2023, the district court issued an order adopting the R&R in full. R. Doc. 59. The court also noted in a footnote that it "had granted an ends-of-justice continuance under § 3161(h)(7)(A)"; it reasoned that "failure to grant

a continuance would deny Harris-Franklin's counsel the reasonable time necessary for effective preparation." *Id.* at 3 n.1.

Shortly after issuing this order, the district court reached out to counsel to set a trial date in February or March 2024. *See* R. Doc. 63, at 3. In an email dated December 8, 2023, the district court indicated its inclination to set Harris-Franklin's trial for January 2, 2024. But before a date could be set, the district court recused and the case was reassigned. R. Doc. 60.

On December 8, 2023, the government moved to continue the trial set for January 2, 2024, and to exclude the time under the Speedy Trial Act. R. Doc. 63, at 1. On December 13, the newly assigned district court held a hearing on the motion for continuance. R. Doc. 67. The district court orally granted the continuance, as well as the requests for exclusion of time.

On January 11, 2024, the district court set Harris-Franklin's jury trial for February 26, 2024. On January 16, Harris-Franklin proceeded to trial in state court on his state charges of attempted second-degree murder and second-degree assault. After he was convicted of both counts for the June 2022 shooting of the victim holding her infant son, the government moved to dismiss Count 1 of its indictment, which was based on the same conduct. R. Doc. 73. The district court granted the dismissal. R. Doc. 74.

On February 26, 2024, the pretrial conference was held. R. Doc. 95. The next day, Harris-Franklin proceeded to trial on Count 2 of the federal indictment concerning the ammunition found in his vehicle in July 2022. R. Doc. 92. Harris-Franklin did not renew his motion to dismiss the indictment on Speedy Trial Act (or any other) grounds before the trial began. He was convicted after a three-day jury trial. R. Doc. 94. The jury also found that Harris-Franklin was an armed career criminal under 18 U.S.C. § 924(e). R. Doc. 96; *see Erlinger v. United States*, 602 U.S.

821 (2024) (requiring a jury to find whether a defendant's past offenses were committed on separate occasions under the ACCA).

## II. *Discussion*

On appeal, Harris-Franklin argues that the district court erred in denying his dismissal motions because his rights under the Speedy Trial Act were violated and 18 U.S.C. § 922(g)(1) is unconstitutional as applied to him under the Second Amendment. Because circuit precedent[2] forecloses Harris-Franklin's Second Amendment argument, we focus solely on whether Harris-Franklin's rights under the Speedy Trial Act were violated.

"The [Speedy Trial] Act generally requires a federal criminal trial to begin within 70 days after a defendant is charged or makes an initial appearance . . . ." *Zedner v. United States*, 547 U.S. 489, 492 (2006) (citing 18 U.S.C. § 3161(c)(1)). However, "the Act recognizes that criminal cases vary widely and that there are valid reasons for greater delay in particular cases. To provide the necessary flexibility, the Act includes a long and detailed list of periods of delay that are excluded in computing the time within which trial must start." *Id.* at 497 (citing 18 U.S.C. § 3161(h)). The Act, for example, excludes "[a]ny period of delay resulting from other proceedings concerning the defendant, including but not limited to" the following:

---

[2]*See, e.g.*, *United States v. Jackson* (*Jackson II*), 110 F.4th 1120, 1125–27 (8th Cir. 2024) (rejecting an as-applied challenge to § 922(g)(1) in which the defendant had prior nonviolent drug offenses, noting that "history supports the authority of Congress to prohibit possession of firearms by persons who have demonstrated disrespect for legal norms of society," and concluding that "there is no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)"), *cert. denied sub nom.*, *Jackson v. United States*, No. 24-6517, 2025 WL 1426707 (U.S. May 19, 2025).

(A) delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant;

(B) delay resulting from trial with respect to other charges against the defendant;

(C) delay resulting from any interlocutory appeal;

(D) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion;

(E) delay resulting from any proceeding relating to the transfer of a case or the removal of any defendant from another district under the Federal Rules of Criminal Procedure;

(F) delay resulting from transportation of any defendant from another district, or to and from places of examination or hospitalization, except that any time consumed in excess of ten days from the date an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable;

(G) delay resulting from consideration by the court of a proposed plea agreement to be entered into by the defendant and the attorney for the Government; and

(H) delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court.

18 U.S.C. § 3161(h)(1). Another excludable period is "[a]ny period of delay resulting from the absence or unavailability of the defendant." *Id.* § 3161(h)(3)(A); *see also id.* § 3161(h)(3)(B) (defining "absent" and "unavailable").

"Much of the Act's flexibility is furnished by § 3161(h)[(7)], which governs ends-of-justice continuances . . . ." *Zedner*, 547 U.S. at 498.[3] Under this provision, a district court may "grant a continuance and . . . exclude the resulting delay if the court, after considering certain factors, makes on-the-record findings that the ends of justice served by granting the continuance outweigh the public's and defendant's interests in a speedy trial." *Id.* at 498–99; *see also* 18 U.S.C. § 3161(h)(7)(A)–(B) (stating that "[a]ny period of delay resulting from a continuance" is excludable when the court finds "that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial" and setting forth the factors that the court "shall consider in determining whether to grant a continuance"). This provision affords "the district court discretion—within limits and subject to specific procedures—to accommodate limited delays for case-specific needs." *Zedner*, 547 U.S. at 499.

If a defendant is not brought to trial within the time limit required under the Act, after taking into consideration any of the statutory exceptions that permit a delay, the "indictment shall be dismissed on motion of the defendant." 18 U.S.C. § 3162(a)(2). "When a district court denies a motion to dismiss on Speedy Trial Act grounds, we review its legal conclusions *de novo* and its ultimate Speedy Trial Act ruling for an abuse of discretion." *United States v. Wilson*, 122 F.4th 317, 323 (8th Cir. 2024).

Here, Harris-Franklin challenges the district court's exclusion of certain periods of time from the statutory 70-day period. The district court found that 19 days were not excludable under the Act. And the government concedes "that the parties' plea negotiations from December 23, 2022–January 17, 2023 [(26 days)], should not

___

[3]"The Act was amended in 2008, and the ends-of-justice subsection was renumbered from § 3161(h)(8) to § 3161(h)(7)." *United States v. O'Connor*, 656 F.3d 630, 636 n.2 (7th Cir. 2011).

-10-

have been excluded as 'other proceedings'" under the Act. Appellee's Br. at 35 (emphasis omitted). Combining the district court's 19-day period with the government's conceded 26-day period yields 45 days of non-excludable time from the 70-day clock. To prevail on appeal, Harris-Franklin must show that the district court erred in excluding 25 additional days.

A. *April 27 to May 17, 2023 (19 days)*

On February 1, 2023, the government moved for a competency evaluation. The district court granted the motion on February 6. The competency report was filed on April 27. The district court held a status conference on May 17. The court subsequently found that the period from April 27 (filing of the competency report) to May 17 (status conference) was excludable.

On appeal, Harris-Franklin argues that the district court erred in excluding these 19 days from its speedy trial calculation based "on the theory that the district court actually had granted the [g]overnment's motion for a competency hearing and had the issue under advisement the entire time between the filing of the evaluation and the next scheduled status conference." Appellant's Br. at 18. According to Harris-Franklin the district court never "granted" a competency hearing and "no hearing took place," *id.*; instead, only a status conference took place that did not concern Harris-Franklin's competence to stand trial.

As explained *supra*, the Speedy Trial Act excludes from the 70-day calculation the "delay resulting from any *proceeding*, including any examinations, to determine the mental competency or physical capacity of the defendant." 18 U.S.C. § 3161(h)(1)(A) (emphasis added). "By making clear that the time spent examining the defendant is included in the delay attributed more generally to a competency proceeding, that provision indicates that such a proceeding involves more than just the competency examination itself." *United States v. Graves*, 722 F.3d 544, 547 (3d Cir. 2013). "[P]roceeding" is defined as "[t]he business conducted by a court or other

-11-

official body; a hearing"; thus, the term "suggests judicial involvement." *Id.* (second alteration in original) (quoting *Proceeding*, Black's Law Dictionary (8th ed. 2004)). The Act's plain language "therefore indicates that the excludable delay under § 3161(h)(1)(A) continues beyond the completion of the Bureau of Prisons competency report, which, important though it is, is only one step in determining a defendant's competence to stand trial." *Id.*

This reading of § 3161(h)(1)(A) "is consistent with 18 U.S.C. § 4241, the statute regarding competency determinations." *Id.* It "provides a mandatory process that is intended to culminate in a record-based judicial determination of competence." *Id.* (internal quotation marks omitted). Under § 4241, a district court must "order a competency hearing whenever there is reasonable cause to believe that the defendant is mentally incompetent." *Id.* (internal quotation marks omitted). "Prior to the date of the hearing, the court may order that a psychiatric or psychological examination of the defendant be conducted . . . ." *Id.* (ellipsis in original) (quoting 18 U.S.C. § 4241(b)). The purpose of the psychiatric examination is "to provide evidence for the hearing." *Id.* (internal quotation marks omitted). Following the competency hearing, the district court must decide "whether, by a preponderance of the evidence, 'the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent' to proceed to trial." *Id.* (quoting 18 U.S.C. § 4241(d)). Thus, the process set forth in § 4241 "suggests that a hearing is a vital part of a 'proceeding . . . to determine the mental competency' of the defendant." *Id.* (ellipsis in original) (quoting 18 U.S.C. § 3161(h)(1)(A)).

The Speedy Trial Act places no limits on "the amount of time that may be spent on a competency proceeding." *Id.* The Act requires that "'[a]ny period of delay' for a competency proceeding . . . 'be excluded' from the 70-day calculation." *Id.* (alteration in original) (quoting 18 U.S.C. § 3161(h)(1)). The "broad language" of § 3161(h)(1) can be contrasted with "§ 3161(h)(6), which provides for the exclusion of a 'reasonable period of delay when the defendant is joined for trial with a

codefendant as to whom the time for trial has not run . . . .'" *Id.* (ellipsis in original). There is no "reasonableness requirement" in § 3161(h)(1) as there is in (h)(6). *Id.* The absence of a reasonableness requirement in § 3161(h)(1) "indicat[es] that Congress intended the exclusion of the periods defined in those other provisions to be 'automatic.'" *Id.* at 547–48 (quoting *Henderson v. United States*, 476 U.S. 321, 327 (1986)). "Thus, when it turns out that a hearing is necessary to resolve a pretrial motion, the entire period before the hearing is excluded from the Speedy Trial Act calculation, regardless of whether the delay was reasonable." *Id.* at 548. As a result, "all delays attributable to a competency proceeding, reasonable or not, are excluded from the 70-day calculation." *Id.*

In summary, "the period of excludable delay under § 3161(h)(1)(A) begins when a party moves for, or the court *sua sponte* orders, a competency determination. The excluded time continues *at least until a competency hearing is held . . . .*" *Id.* (second emphasis added).[4]

> In other words, the period between a request for a competency examination and a hearing addressing that issue is clearly part of the "delay resulting from any proceeding . . . to determine the mental competency or physical capacity of the defendant," and therefore is "excluded . . . in computing the time within which the trial . . . must commence."

*Id.* (ellipses in original) (quoting 18 U.S.C. § 3161(h)(1)(A)).

We have recognized that a district court has "discretion to hold or to forgo an additional hearing on [a defendant's] competency" when "[t]he psychiatric report

---

[4]"Because the [d]istrict [c]ourt [in *Graves*] made its competency determination at the hearing, [the Third Circuit did] not resolve the question of when a post-hearing delay may also be excluded." *Id.* at 548 n.6.

submitted to the court indicated that [the defendant] was competent to stand trial." *United States v. Jones*, 23 F.3d 1307, 1309 (8th Cir. 1994). But even in the absence of a hearing, the district court must make "a subsequent judicial declaration of competency." *Id.* at 1310 (explaining "that such a declaration is necessary").

Here, the mental competency report docketed on April 27, 2023, concluded that Harris-Franklin was competent. At that point, the court could have forgone a competency hearing and made a judicial declaration of competency on the record. *See id.* at 1309. But the district court opted to hold a hearing. The same day that the report was filed, the district court scheduled a "[s]tatus [c]onference" for May 17. R. Doc. 28. Labeling the hearing a "status conference" is of no consequence—the record makes clear that the hearing's purpose was to discuss, in part, Harris-Franklin's competency. *See Graves*, 722 F.3d at 545 (noting that the competency report was reviewed at a "status hearing"). At the outset of the status conference, the district court explained that it had previously "ordered a forensic evaluation to be done . . . to evaluate" Harris-Franklin's competency. R. Doc. 40, at 2. The court indicated that it had received the competency report and that counsel had also received and reviewed it. When Harris-Franklin indicated that he had not reviewed the report but would like to, the court provided him with a copy and afforded him time to review it. After Harris-Franklin reviewed the report, he commented that the court had "chose[n] to send [him] on a frivolous mental health evaluation." *Id.* at 7. The court replied that "whether that was frivolous or not, [Harris-Franklin had] been found to be *competent at trial*." *Id.* (emphasis added). As a result, the court's next step was to determine how to "proceed with [Harris-Franklin's] case." *Id.* The district court's acknowledgment that Harris-Franklin had been found competent constitutes its "judicial declaration of competency." *See Jones*, 23 F.3d at 1310.

"[W]e conclude that the period of excludable delay under § 3161(h)(1)(A)" began to run in this case when the government moved for a competency determination on February 1, 2023. *See Graves*, 722 F.3d at 548. "The excluded time

continue[d]" until the district court held the May 17 status conference, *id.*, during which it made the necessary competency finding, *see Jones*, 23 F.3d at 1309. As a result, the district court did not err in excluding the challenged 19-day period.

B. *June 1 to July 11, 2023 (40 days)*

During the May 17, 2023 status conference, the district "[c]ourt explained the need for [a] continuance on the record . . . in response to Harris-Franklin's oral motion for new counsel." R. Doc. 59, at 3 n.1 (citing R. Doc. 40, at 10–11). "Harris-Franklin acknowledged that his new counsel would require time to prepare motions." *Id.* (citing R. Doc. 40, at 10–11). On May 31, the district court appointed Harris-Franklin new counsel. On July 11, Harris-Franklin's new counsel moved for leave to file pretrial motions. The magistrate judge found that the time period from June 1 to July 11 was "excludable because the [district court] had granted an ends-of-justice continuance under § 3161(h)(7)(A) to allow Harris-Franklin's new counsel a reasonable time to prepare pretrial motions" at the May 17 status conference. *Id.* (citing R. Doc. 54, at 16–18). The district court agreed with this finding and clarified, "To the extent that the [c]ourt may not have fully articulated the basis for the continuance, the [c]ourt finds that failure to grant a continuance would deny Harris-Franklin's counsel the reasonable time necessary for effective preparation." *Id.* (citing 18 U.S.C. § 3161(h)(7)(B)(iv)). As a result, the court found "that the ends of justice served by granting the continuance outweigh[ed] the best interest of the public and Harris-Franklin in a speedy trial." *Id.* (citing 18 U.S.C. § 3161(h)(7)(A)).

On appeal, Harris-Franklin argues that "the forty (40) days between the appointment of counsel and the request for a continuance to prepare motions . . . is *not* excludable for any reason." Appellant's Br. at 20 (bold omitted). Harris-Franklin emphasizes that it was not until the district court entered its order adopting the R&R that it "put on the record the required ends-of-justice finding." *Id.* Although Harris-Franklin concedes that "such retroactive record-making is not entirely forbidden," he asserts that the district court's retroactive finding was limited to new counsel needing

"time *to prepare motions.*" *Id.* According to Harris-Franklin, "While the district court had anticipated that [his] new counsel *might* seek a continuance to prepare motions, new counsel did not seek that continuance until *after* the forty days at issue already had passed . . . . " *Id.* at 21 (footnote omitted).[5]

Section 3161(h)(7)(A) permits a district court to exclude from the 70-day period "[a]ny period of delay resulting from a continuance granted by any judge . . . if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." The Act provides a non-exhaustive list of factors for a district court to consider in making its ends-of-justice determination, including "[w]hether the failure to grant such a continuance in a case which . . . would deny counsel for the defendant . . . the reasonable time necessary for effective preparation, taking into account the exercise of due diligence." *Id.* § 3161(h)(7)(B)(iv).

A district court "must set forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice are served and they outweigh other interests. The court must make the findings, *if only in the judge's mind*, before granting the continuance." *United States v. Johnson*, 990 F.3d 661, 667 (8th Cir. 2021) (emphasis added) (cleaned up). We require the district court to put its "findings on the record by the time [it] rules on a defendant's motion to dismiss under § 3162(a)(2)." *Id.* (internal quotation marks omitted).

Here, in ruling on Harris-Franklin's motion to dismiss, the district court concluded that the ends of justice would be served by continuing the trial to allow Harris-Franklin's new counsel time to prepare for trial. Specifically, the district court

---

[5]Harris-Franklin has not argued that the district court failed to order a continuance on May 17; instead, he argues only that the district court did not make the ends-of-justice findings "*before* granting the continuance." Appellant's Br. at 20.

found "that failure to grant a continuance would deny Harris-Franklin's counsel the reasonable time necessary for *effective preparation*." R. Doc. 59, at 3 n.1 (emphasis added).

Consistent with § 3161(h)(7)(B)(iv), we have upheld district courts' findings that the ends of justice would be served by continuing the trial to allow new counsel time to prepare for trial; however, in all of those cases the district courts excluded from the speedy trial calculations the time between the appointment of new counsel *and the new trial date*.[6] In this case, however, the district court left the continuance *open ended* to afford new counsel time to prepare motions and did not set a new trial date. Defense counsel ultimately *did not* file any motions after the May 31 appointment but instead filed the *motion for leave to file pretrial motions* on July 11, 2023.

We have "never addressed whether ends-of-justice continuances granted under § 3161(h)(7) may be open ended." *United States v. Grady*, 88 F.4th 1246, 1256 (8th Cir. 2023).[7] And we declined to address the issue in *Grady* because the district court's

---

[6]*See, e.g.*, *United States v. Harlan*, 960 F.3d 1089, 1092–93 (8th Cir. 2020) (holding that the district court committed no error in "exclud[ing] from the speedy trial calculations the time between May 31st (the date the court granted the [defendant's motion for] continuance) and August 20th (the date the trial was continued to)" to afford new counsel additional time to prepare for trial); *United States v. Rector*, 598 F.3d 468, 473 (8th Cir. 2010) (holding that the district court committed no error in excluding from the speedy trial calculation the "time between July 23 [the date of the change-of-plea hearing at which the defendant informed the court that he wanted to terminate counsel and hire new counsel] and August 25, 2008, [the new trial date]" because the "ends of justice" would be served "by allowing (1) the defendant to retain new counsel and (2) counsel to seek admission to the district and prepare for trial").

[7]We note that in an unpublished per curiam opinion, this court concluded that a defendant's rights under the Speedy Trial Act were not violated when "the district

-17-

"continuances, while accompanied by no express end date, were effectively limited in time, *as they were regularly reevaluated.*" 88 F.4th at 1256 (emphasis added). Here, the district court did not reevaluate the continuance during the 40-day period; no progress in the case ensued until defense counsel moved for leave to file pretrial motions.

Our sister "circuits have split over whether a district court may grant an open-ended continuance under § 3161(h)([7])(A)." *United States v. Westbrook*, 119 F.3d 1176, 1187 (5th Cir. 1997). "The First and Third Circuits have stated that open-ended continuances to serve the ends of justice are not prohibited, provided 'they are reasonable in length.'" *United States v. Spring*, 80 F.3d 1450, 1458 (10th Cir. 1996) (first quoting *United States v. Lattany*, 982 F.2d 866, 868 (3rd Cir. 1992); and then citing *United States v. Rush*, 738 F.2d 497, 508 (1st Cir. 1984)). Similarly, the Fifth Circuit has "held that open-ended continuances are not prohibited, but noted that 'such a continuance for any substantial length of time is extraordinary and must be adequately justified by the circumstances of the particular case.'" *Id.* (quoting *United States v. Jones*, 56 F.3d 581, 586 (5th Cir. 1995)). The Tenth Circuit has "agree[d] with the First, Third, and Fifth Circuits that, while it is preferable to set a specific ending date for a continuance, there will be rare cases where that is not possible, and an open-ended continuance for a reasonable time period is permissible." *Id*. The Eleventh Circuit has likewise recognized that "[a]n open-ended continuance may be granted to serve the ends of justice," holding that "[i]f the trial court determines that the 'ends of justice' require the grant of a continuance, and makes the required findings, *any* delay is excludable under § 3161(h)([7])(A) of the Speedy Trial Act." *United States v. Twitty*, 107 F.3d 1482, 1489 (11th Cir. 1997).

---

court ordered an open-ended continuance to address [the defendant's] numerous motions, and [the defendant] was primarily responsible for the delay of trial." *United States v. Flying Horse*, No. 22-2202, 2022 WL 6861539, at *1 (8th Cir. Oct. 12, 2022) (unpublished per curiam).

By contrast, the Second and Ninth Circuits have concluded that ends-of-justice continuances must be limited in time. *See United States v. Gambino*, 59 F.3d 353, 358 (2d Cir. 1995) (stating that "[t]he length of an exclusion for complexity must be . . . limited in time")[8]; *United States v. Jordan*, 915 F.2d 563, 565 (9th Cir. 1990) (stating that "ends of justice" continuance must "be specifically limited in time" and supported by findings justified by the record); *United States v. Pollock*, 726 F.2d 1456, 1461 (9th Cir. 1984) (rejecting open-ended continuances and holding that "an 'ends of justice' extension . . . is proper only if ordered for a specific period of time and justified on the record with reference to the factors enumerated in section 3161(h)([7])(B)" (emphasis omitted)).

"Doubtless it is generally preferable to limit a continuance to a definite period for the sake of clarity and certainty . . . ." *Rush*, 738 F.2d at 508. But we agree with the majority of our sister circuits that "open-ended continuances may be necessary in some cases." *Lattany*, 982 F.2d at 880 (citing *Rush*, 738 F.2d at 508 (stating that there may be circumstances in which "a court is forced to order an (h)([7]) continuance without knowing exactly how long the reasons supporting the continuance will remain valid")); *see also Jones*, 56 F.3d at 586 ("There will be some situations in which it is impossible, or at least quite difficult, for the parties or the court to gauge the length of an otherwise justified continuance.").

Open-ended "continuances can be reconciled with the Speedy Trial Act provided they are not permitted to continue for an unreasonably long period of time." *Lattany*, 982 F.2d at 881. First, § 3161(h)(7)(A) does not contain a "fixed limit to the amount of time that may be excluded under the ends of justice provision. The

---

[8]We note that the Second Circuit "slightly equivocated in the very next sentence, observing that '*[g]enerally* a trial court should set at least a tentative trial date in granting a complex case exclusion.'" *Spring*, 80 F.3d at 1458 (alteration in original) (quoting *Gambino*, 59 F.3d at 358).

provision excludes '*any* period of delay resulting from a continuance.'" *Twitty*, 107 F.3d at 1489 (quoting *United States v. Vasser*, 916 F.2d 624, 627 (11th Cir. 1990)). Second, "[s]ubsection (h)([7]) of the Act is designed to make the Speedy Trial Act 'flexible enough to accommodate the practicalities of our adversary system.'" *Lattany*, 982 F.2d at 881 (quoting *Rush*, 738 F.2d at 508). Barring open-ended continuances would be contrary to the Act's purpose. *Id.*

Third, as relevant here, one of the non-exhaustive factors a district court considers in making its ends-of-justice determination is the impact not granting the continuance would have on affording defendant's counsel "reasonable time" to effectively prepare. 18 U.S.C. § 3161(h)(7)(B)(iv). Thus, applying a "reasonableness limitation is appropriate to prevent continuances from delaying trials unfairly and circumventing the dismissal sanctions in the Speedy Trial Act." *Lattany*, 982 F.2d at 880–81 (quoting *Rush*, 738 F.2d at 508). Thus, "open-ended continuances to serve the ends of justice are not prohibited if they are reasonable in length." *Id.* at 868.

Because "open-ended continuances cannot . . . be unreasonably long, we must decide whether the delays that resulted from the district court's open-ended continuance . . . are reasonable under the particular circumstances of this case." *Id.* at 882. On this record, we conclude that 40 days was "a reasonable time period." *See Spring*, 80 F.3d at 1458. Harris-Franklin's request for new counsel at the May 17 status conference necessitated the delay. Harris-Franklin was dissatisfied with his counsel at the time for not filing certain pretrial motions. The district court explained that if it appointed new counsel for Harris-Franklin, that his new counsel would require additional time to file such motions. During the 40-day period, new counsel did not request a definitive trial date, nor did counsel object to the open-ended continuance. In denying the motion to dismiss, the district court clarified that the continuance was to afford new counsel a reasonable time to prepare for trial, not just to prepare pretrial motions. *See Lattany*, 982 F.2d at 881 (citing the District of Maine's Speedy Trial Plan, which recognized the concern for open-ended

-20-

continuances and specifically provided "that an (h)(8) continuance may be granted 'for either a specific period of time or a period to be determined by reference to an event . . . not within the control of the government'").

Accordingly, we hold that the district court did not err in granting the open-ended ends-of-justice continuance under § 3161(h)(7)(A) to afford new counsel time to prepare for trial. As a result, the district court did not err in excluding the challenged 40-day period from the speedy trial calculation.

### C. *Alleged Periods of Additional Non-Excludable Time*

Harris-Franklin argues that two more periods of non-excludable time accrued *after* the district court denied Harris-Franklin's motion to dismiss based on violation of the Speedy Trial Act. First, he argues that the speedy trial clock began to run on November 16, 2023, the day after the district court denied dismissal, and ran until the government filed its motion for continuance on December 8, 2023 (22 days). Second, he argues that the speedy trial clock resumed on December 14, 2023—the day after the district court held a hearing on the government's motion for continuance of trial, granted that continuance, and excluded the time from the old trial date to the new trial date from the speedy trial clock—and ran until the trial began on January 2, 2024 (19 days).

The government responds that Harris-Franklin "cannot raise for the first time on appeal new arguments alleging new periods of delay that supposedly occurred after the filing of the motion to dismiss." Appellee's Br. at 23. According to the government, "the failure to renew a motion to dismiss under the Speedy Trial Act waives any period of delay that occurs after the motion was filed." *Id.* at 22.

"Section 3162(a)(2) [of the Speedy Trial Act] states that the '[f]ailure of the defendant to move for dismissal prior to trial . . . shall constitute a *waiver* of the right to dismissal under this section.'" *United States v. Taplet*, 776 F.3d 875, 879 (D.C. Cir.

2015) (second alteration in original) (emphasis added) (quoting 18 U.S.C. § 3162(a)(2)). We have not yet addressed whether "defendants waive a period of non-excludable time if they fail to raise it in their motion to dismiss or fail to renew their [Speedy Trial Act] claims prior to trial." *Id.* at 881. But the majority of our sister circuits to have addressed the issue have held that waiver applies to specific non-excludable periods of time not raised in a dismissal motion or renewed dismissal motion.[9]

---

[9] *See, e.g.*, *United States v. Holley*, 813 F.3d 117, 121 (2d Cir. 2016) (per curiam) ("We have not squarely addressed whether the [Speedy Trial Act]'s waiver provision applies where, as here, the defendant made a timely motion to dismiss on [Speedy Trial Act] grounds but failed to challenge a particular period of delay. However, several other circuit courts have held that, under these circumstances, the defendant has waived any claims not specifically raised below. We are persuaded by the reasoning of our sister circuits." (citations omitted)); *Taplet*, 776 F.3d at 881 ("[D]efendants waive a period of non-excludable time if they fail to raise it in their motion to dismiss or fail to renew their [Speedy Trial Act] claims prior to trial."); *United States v. Loughrin*, 710 F.3d 1111, 1121 (10th Cir. 2013) ("We therefore conclude that a defendant seeking to challenge on appeal a district court's order of continuance must do the same in his motion to dismiss to the district court. Because Loughrin did not object to the November 18 order, he cannot do so now."); *United States v. Gates*, 709 F.3d 58, 68 (1st Cir. 2013) ("To avoid a finding of waiver, therefore, a defendant must raise any potential [Speedy Trial Act] violations before the district court in a motion to dismiss."); *cf. United States v. O'Connor*, 656 F.3d 630, 638 (7th Cir. 2011) (finding forfeiture at a minimum, but noting that "the text of § 3162(a)(2)—read as a whole and in light of the [Supreme] Court's language in *Zedner*—strongly suggests that violations not specifically identified in the defendant's motion to dismiss are waived, not forfeited").

These courts have used four rationales for their holdings. First, "[t]hese circuits reasoned that since 'spotting' [Speedy Trial Act] violations is a role assigned to defendants, 'it follows that any specific violation not raised in a motion to dismiss is waived.'" *Taplet*, 776 F.3d at 880 (quoting *O'Connor*, 656 F.3d at 638). "This ensures that the district court has the opportunity to develop all arguments below and fully explain its reasoning for excluding a particular period of delay." *Holley*, 813 F.3d at 121.

Second, and relatedly, applying plain error review instead of waiver "would force the court on a motion to dismiss for [Speedy Trial Act] violation[s] to consider every conceivable basis for challenging its orders of continuance and exclusions of time, for fear that the defendant would raise new arguments on appeal." *Taplet*, 776 F.3d at 880 (quoting *Loughrin*, 710 F.3d at 1121). This would "shift to the district court" the "burden to identify [Speedy Trial Act] violations" and "contravene Congress's intent to place that burden squarely on the defendant." *Holley*, 813 F.3d at 121.

Third, "[i]mplicit in the requirement that a defendant 'move for dismissal' is the requirement that the defendant specify the reason for the motion." *Taplet*, 776 F.3d at 880 (first quoting 18 U.S.C. § 3162(a)(2), and then citing Fed. R. Crim. P. 47(b) ("A motion must state the grounds on which it is based . . . .")). A defendant's failure "to specify the particular exclusions of time within his or her motion to dismiss" means that he has not "move[d] for dismissal on that ground. And when a defendant fails to renew an objection after a period of non-excludable time has passed, the defendant has, in effect, not moved for dismissal at all." *Id.*

Finally, "[b]y requiring defendants to notify district courts of any potential exclusions of time within their motions to dismiss and requiring them to renew their motions, waiver also prevents 'undue defense gamesmanship.'" *Id.* (quoting *Zedner*, 547 U.S. at 502–03). "Due to its mechanical nature, a meritorious [Speedy Trial Act]

-23-

claim will always be plain [error] to a reviewing court and will always affect substantial rights." *Id.* at 881. As a result, defendants are "incentiv[ized] to withhold meritorious non-excludable time in their motions to dismiss on the chance that if their trials go badly, plain error review of a[] [Speedy Trial Act] claim will act as a one-time reset button." *Id.* Given this "potential for gamesmanship," applying § "3162(a)(2)'s waiver provision . . . provides a strong incentive, forcing defendants to raise all non-excludable time periods in their motions to dismiss." *Id.*

Accordingly, we join the majority of our sister circuits in holding that waiver applies to specific non-excludable periods of time not raised in a dismissal motion or renewed dismissal motion. Here, Harris-Franklin failed to file a renewed dismissal motion to raise these additional periods of time as non-excludable. As a result, those periods of delay are waived.

## D. *Summary*

To prevail on appeal, Harris-Franklin needed to show that the district court erred in excluding 25 additional days[10] from the speedy trial calculation. Because he has failed to do so, we affirm the district court's denial of Harris-Franklin's motion to dismiss on the ground that his rights under the Speedy Trial Act were violated.

## III. *Conclusion*

Accordingly, we affirm the district court's denial of Harris-Franklin's motions to dismiss. First, Harris-Franklin's rights under the Speedy Trial Act were not violated. Second, circuit precedent forecloses Harris-Franklin's argument that 18

---

[10]Harris-Franklin also argues that the 14-day period of time from January 18 to February 1, 2023, is non-excludable. We need not address his argument. Assuming he is correct, he still falls short of satisfying his burden to show that the amount of non-excludable time was exceeded.

U.S.C. § 922(g)(1) is unconstitutional as applied to him under the Second Amendment.

———————————————————